OPINION
{¶ 1} Defendant-appellant Allen Swimer appeals from his conviction and sentence, following a guilty plea, upon one count of Felonious Assault, with a firearm specification. Swimer's appellate counsel has filed a brief under the authority of Anders v. California (1967), 386 U.S. 738,87 S.Ct. 1396, indicating that she has not been able *Page 2 
to find any potential assignments of error having arguable merit.
 {¶ 2} We have performed our duty, under Anders v. California, to review the record independently, and we have not found any potential assignments of error having arguable merit. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} The facts leading up to Swimer's arrest and conviction were recited in the record at his plea hearing, by the prosecutor, as follows:
 {¶ 4} "The facts of this case, on or about the 26th day of October, 2007, the defendant, Allen Swimer, was in the area of Medway, Ohio, when he had a confrontation with several individuals outside an apartment there. Following that confrontation the defendant went to his home, got a rifle, come [sic] out of the house, returned to the location, shot one of those individuals through — passed through the victim's back and came out of his stomach. That victim spent in excess of four months in the hospital. All of this happened in Clark County, Ohio."
 {¶ 5} Swimer was charged by indictment with one count of Attempted Murder, with a firearm specification, with one count of Tampering with Evidence, and with one count of Felonious Assault — knowingly causing or attempting to cause bodily harm to another by means of a deadly weapon. In a plea bargain, the charge of Attempted Murder was reduced to Felonious Assault, with a firearm specification; Swimer pled guilty to that charge and specification, as amended; and the other counts were dismissed.
 {¶ 6} Swimer signed a written plea agreement, which was filed. At the plea *Page 3 
hearing, the trial court conducted a colloquy pursuant to Crim. R. 11, and accepted the plea. Immediately after the plea was accepted and Swimer was found guilty, the trial court ascertained from both counsel that there had been no agreement whether Swimer's pre-trial bond would be continued. The trial court decided that in view of the serious nature of Swimer's conduct, Swimer would be held without bond pending the sentencing hearing. The following colloquy ensued:
 {¶ 7} "MS. CUSHMAN [representing Swimer]: Your Honor, there was no indication whatsoever in the plea agreement. He did not alert me that he was going to ask anything like this specifically. We need a presentence investigation. My client and I had an appointment, as the trial was supposed to start on Monday, and we were going to spend much of the day interviewing — not interviewing — going and getting some letters, talking to his minister, talking to various people in his community.
 {¶ 8} "There was no indication given to me whatsoever as part of this agreement that he — my client is aware when he is sentenced on April 25 that he's going to do three years minimum. He's aware of that.
 {¶ 9} "THE COURT: He's going to do five years minimum, three years for the firearms specification and two years for felonious assault.
 {¶ 10} "MS. CUSHMAN: Right now he's being — I would ask the Court to reconsider that. There was nothing to indicate to us other than the presentence investigation that he would be going in today. There was no discussion about that at all. Mr. Driscoll [representing the State] did not alert me to the fact that he was going to ask that be given. It's my understanding the presentence investigation would allow us to gather documentation to give to the probation department in order to be able to speak to *Page 4 
the Court on April 25.
 {¶ 11} "We were not sure what date was going to be. He and I have got appointments. He's never not shown up for any Court hearing. He's not gotten into any trouble whatsoever during the pendency of this, and I would ask — strongly request the Court — he has voluntarily made a plea in this, your Honor, and I would ask the Court to reconsider the bond. He is going to show up.
 {¶ 12} " * * *.
 {¶ 13} "MR. DRISCOLL [representing the State]: Your Honor, if I may. She's characterizing this as somehow we're sandbagging the defense. Once we came in here today, there was absolutely no discussion or talks about what bond would be once the plea was made. It was a discussion, a presentence investigation would be completed. And if the record is read back, the state of Ohio has never made such a request that the defendant be held on that bond.
 {¶ 14} "The state simply brought forward to the Court that there is a mandatory prison sentence that will be imposed in this case and the Court made that decision. For the record, the state has had no discussions with the Court prior to coming in today and prior to coming into this court about what bond should be following the plea in this case. Having said that, the state has no objection to the Court's ruling."
 {¶ 15} Whereupon, defense counsel reiterated her request that bond be continued pending sentencing, and the trial court put on the record its reasons for denying that request. The following then ensued:
 {¶ 16} "THE DEFENDANT: Your Honor, can I please say something?
 {¶ 17} "THE COURT: Yes. *Page 5 
 {¶ 18} "THE DEFENDANT: I was told that I would get a chance to bring forth my evidence to you and plead my case to you and this — I haven't had a chance to say bye to my little baby or anything. I promise I'll come to court. I'm an honest man. I did not do this on purpose. This lady lied to me. She said I would not go to jail today. She told me I would prove my case to you and — I want to withdraw my plea. And I feel I'm treated very unfair. I want a chance to take this to trial. What she's been telling me is not true.
 {¶ 19} "MS. CUSHMAN: Your Honor, I did not. I have never had — either this court or the court downstairs, anyone go to jail pending a presentence investigation. I told him that there would be — as a matter of fact, his grandmother was going to come up this Thursday. He's as surprised as I am. I actually expected that he would be going home.
 {¶ 20} "I didn't intentionally lie but, yes, I told him we'd probably be back in two to three weeks. So I'm thinking that's the only lie thing I've told him. He had no idea whatsoever. That's one reason why his wife and child didn't come with him. I told him we'd come in here and be home by noon. I have never in all my practice — I've never experienced this before where the person did not go home, especially when they posted bond, after a plea pending a presentence investigation.
 {¶ 21} " * * *.
 {¶ 22} "THE COURT: * * *.
 {¶ 23} "Now, if counsel and the defendant were under the impression that the defendant would be free to go this morning, you know, that's something that probably should have been addressed with the Court or the prosecutor beforehand since it *Page 6 
wasn't. If the defendant is interested in withdrawing his guilty plea, you can file a motion and I'll consider that.
 {¶ 24} "But at this point in time on the surface I don't see anything that was done improperly. So if you want to file a motion to withdraw the guilty plea, I'll review that and consider that. But as of right now, the Court's ruling stands.
 {¶ 25} "MS. CUSHMAN: Your Honor, just for the record, I would like to have on the record the fact that I did request to talk to you and Mr. Driscoll and instead — we didn't get that opportunity to talk to you before we came in here. I just want that on record.
 {¶ 26} "THE COURT: That's not true, Miss Cushman. When I asked the state to put the terms of the agreement on record — first of all, I heard you say in chambers and I heard my bailiff say you can put those requests to the Court on record. So your opportunity — you were not foreclosed from an opportunity of addressing the Court on that issue. The decision was made those conversations would be on the record. That's all. And you didn't do that.
 {¶ 27} "You're not going to blame the Court now for something that you didn't do. I'm not going to stand for that. You know, you neglected to make arrangements on that issue and, you know, now you're going to try to turn around and blame the Court. That's just inappropriate. You had every opportunity to place the terms of the agreement on record. You had an opportunity when I asked is that a full statement of the agreement. You could have said no, there was an additional issue I wanted to —
 {¶ 28} "At the end of the plea I asked you if there was any agreement on bond. You said no. You didn't say anything else. So that's just the way it is. If Mr. Swimer's *Page 7 
not satisfied with the representation that he got or if counsel's not satisfied with the way the Court's conducted itself, you can file a motion to withdraw the guilty plea and I'll consider that. But, you know, I'm not inclined to grant it because this is typically the way the Court operates.
 {¶ 29} "And I don't find that anybody's reneged or gone back on any kind of a plea agreement. The defendant, you know, was informed of what the terms of the agreement were. But if there's an issue that I'm not aware of or something that counsel wants to development on the order, then you can file a motion and I'll consider it.
 {¶ 30} "MS. CUSHMAN: I will, Your Honor."
 {¶ 31} Swimer did not file a motion to withdraw his plea. He appeared at his sentencing hearing, and he and his counsel addressed the trial court on the issue of mitigation. Letters had been elicited on Swimer's behalf, and the trial court acknowledged having read those letters. No mention was made of any desire to withdraw Swimer's plea.
 {¶ 32} Swimer's trial counsel acknowledged, in her statement to the trial court on Swimer's behalf, that she had not been able to find similar cases from which to make a proportionality argument:
 {¶ 33} "Your Honor, I — I had a lot of time. We did a lot of research for case law to provide specifically similar crimes by similar offenders.
 {¶ 34} "Frankly, we didn't find any — difficulty finding case law to provide similar crimes committed by similar offenders representative of today's sentencing guidelines after [State v.] Foster [109 Ohio St.3d 1,2006-Ohio-856] because there are not many cases where an individual, such as my client, has led pretty much a law-abiding life, had *Page 8 
a family, had gainful employment, and felt remorse."
 {¶ 35} During the course of Swimer's own statement to the trial court at his sentencing hearing, he said:
 {¶ 36} "I had — I had no intent on harming anyone. I was only trying to get the license plate number of the person — people responsible for assaulting me and my car."
 {¶ 37} The trial court did not credit this statement:
 {¶ 38} "I don't believe that you went back to the scene with the intent of getting a license number. I think if you did that, there would be no reason for you to bring a firearm. You could get a license number from driving by without ever having to exit your vehicle.
 {¶ 39} "And I don't believe that you shot anybody in an effort to defend yourself or your wife or your property because the evidence in this case is that the victim was shot in the back. I think it's clear that you were angered by what happened the first time you were there; and you went home and got a firearm and went back, shot Mr. Zargosa."
 {¶ 40} The trial court sentenced Swimer to seven years for Felonious Assault, one year less than the maximum, to be served consecutively with, and following, the mandatory three-year term for the firearm specification, for an aggregate sentence of ten years. From his conviction and sentence, Swimer appeals.
 {¶ 41} Swimer's appellate counsel has filed a brief under the authority of Anders v. California, supra, indicating that she has not been able to find any potential assignments of error having arguable merit. By entry filed herein on October 20, 2008, we afforded Swimer sixty days within which to file his own, pro se brief. He has not done so. *Page 9 
 II {¶ 42} We have performed our independent duty, under Anders v.California, supra, to review the record. We have not found any potential assignments of error having arguable merit.
 {¶ 43} In appellate counsel's brief, she identifies three potential assignments of error that she considered, but rejected as having no arguable merit. The first of these is that the trial court erred by imposing an excessive sentence. After State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, a trial court has discretion in deciding the appropriate sentence to impose for a felony. Although Swimer is a first-time felony offender, having apparently previously committed no criminal offense more serious than a misdemeanor marijuana possession offense in high school, the serious injury that he inflicted on his victim — shooting him in the back — which caused the victim to be hospitalized for over four months, persuades us that no reasonable argument can be made that the trial court abused its discretion by imposing a seven-year sentence, one year less than the maximum, for the principal offense of Felonious Assault, to which three years were required to be added for the firearm specification.
 {¶ 44} The second potential assignment of error identified by appellate counsel is that the trial court failed to give consideration to the sentencing factors listed in R.C. 2929.11, 2929.12, and 2929.13. From our review of the record, which contains the trial court's oral explanation of the reason for its sentence, not quoted above, we conclude that the record does not support this potential assignment of error. To the contrary, although the trial court did not quote, or specifically cite, the sentencing factors, the record suggests that the trial court gave appropriate consideration to those factors, *Page 10 
which were argued by both parties at the hearing.
 {¶ 45} The third, and final, potential assignment of error to which appellate counsel gave consideration is that Swimer's plea was not made voluntarily, knowingly and intelligently. This potential assignment of error probably comes the closest to meeting the Anders test of not being wholly frivolous, but we conclude that it does not satisfy that test.
 {¶ 46} To be sure, at one point, quoted in Part I, above, Swimer indicated that he had been under the impression that he would have a chance to bring forth his evidence and plead his case. But the context strongly implies that he was referring to his opportunity to develop a case on mitigation, not on his innocence. Significantly, Swimer's plea had already been accepted, and he had been found guilty, when he made this statement, so an alleged error on the part of the trial court in having accepted Swimer's plea cannot be predicated upon it.
 {¶ 47} Moreover, the trial court made it abundantly clear, several times after Swimer made this statement, that if Swimer wished to withdraw his plea, he should file a written motion, and the trial court would consider it. No motion to withdraw was filed. From the parts of the transcript of the plea hearing quoted above, it is apparent that what bothered Swimer was that he would not be remaining on bond pending the sentencing hearing, as he had assumed. He had wanted the opportunity to go home and come to terms with the fact that he would be separated from his new wife and baby for a long time. A motion to withdraw his plea, even if successful, would not have changed the fact that he had not been able to go home after the plea hearing, and would have entailed losing all of the other benefits that he obtained from the plea bargain — the *Page 11 
reduction of the principal charge from Attempted Murder to Felonious Assault, and the dismissal of the Tampering with Evidence charge.[1]
This may have been the reason why Swimer did not file a motion to withdraw his plea.
 {¶ 48} Finally, in connection with the propriety of the trial court's having accepted Swimer's plea, his appellate counsel notes, in passing, that the trial court did not "specifically inform [Swimer] that he would not be eligible for community control." While this is true, the trial court having not addressed the subject of Swimer's eligibility for community control during the plea hearing, the written plea form that Swimer signed correctly informed him that: "If this Court is not required by law to impose a prison sanction, it may impose Community Control sanctions or non-prison sanctions upon me." During the plea colloquy, Swimer was told that the three-year sentence for the firearm specification was a mandatory sentence, which meant that he could not receive a community control sanction for the firearm specification. As for the sentence for Felonious Assault, since Swimer was a first-time felony offender, he presumably could have had a community control sanction imposed for that offense, to follow the three-year prison term for the firearm specification. From the transcript, it appears that both the trial court and Swimer's trial counsel did not regard that as a likely outcome, which is understandable in view of the serious injury Swimer inflicted upon his victim, but Swimer was theoretically eligible for a community control sanction for the principal offense, so the trial court cannot have erred by failing to have informed him that he was not eligible. *Page 12 
 {¶ 49} After performing our duty of independent review, we have found no potential assignments of error having arguable merit, and we conclude that this appeal is wholly frivolous.
 III {¶ 50} Our having found no potential assignments of error having arguable merit, and our having found that this appeal is wholly frivolous, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.
[1] Upon this limited record we cannot be certain, but it appears that the original Felonious Assault charge, which was dismissed, involved the same shooting of the same victim, so that a conviction on this charge would, in any event, have merged with the conviction on the Attempted Murder charge. *Page 1