[Cite as *State v. Beaty*, 2011-Ohio-5014.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee                 :          C.A. CASE NO.     24048

v.                                     :          T.C. NO.     09CR4075

JOSHUA L. BEATY                        :          (Criminal appeal from
                                                  Common Pleas Court)
    Defendant-Appellant                :

                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____30th____ day of ____September____,
2011.

. . . . . . . . . .

LAURA M. WOODRUFF, Atty. Reg. No. 0084161, Assistant Prosecuting Attorney,
301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

RICHARD A. NYSTROM, Atty. Reg. No. 0040615, 1502 Liberty Tower, 120 West
Second Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

JOSHUA L. BEATY, #627871, 5900 B.I.S. Road, Lancaster, Ohio 43130
    Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Joshua L. Beaty pled no contest to two counts of felonious assault,

with gun specifications, and having weapons while under disability.  The charges

stemmed from the shooting of Markus Singleton, allegedly because Beaty believed that Singleton had thrown away Beaty's cocaine. Two weeks before the shooting, Beaty had been convicted of possession of cocaine and placed on community control; this conviction resulted in a prohibition against possessing firearms. See *State v. Beaty*, Montgomery C.P. No. 2009 CR 2404.

{¶ 2} The trial court found Beaty guilty of the charges, merged the two felonious assault counts and specifications, and sentenced Beaty to five years in prison for felonious assault and to three years in prison for having weapons while under disability. The sentences were to be served concurrently with each other, but subsequent to three years of incarceration for the firearm specification. The sentences were also made concurrent to the 12-month sentence imposed in Case No. 2009 CR 2404 for Beaty's violation of community control. Beaty was ordered to pay restitution to Singleton and costs.

{¶ 3} Beaty appealed from his convictions. Beaty's appointed appellate counsel subsequently filed a brief pursuant to *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, wherein counsel represented that, after a thorough examination of the record, he was unable to discover any errors by the trial court that were prejudicial to Beaty. Counsel proposed one assignment of error with six potential issues for appeal, but argued that the assignment of error was frivolous.

{¶ 4} By magistrate's order of March 11, 2011, we informed Beaty that his counsel had filed an *Anders* brief and of the significance of such a brief. We invited Beaty to file a pro se brief assigning errors for review. Beaty responded

with a letter, which we construe as a pro se brief.

{¶ 5}  The case is now before us for our independent review of the record. *Penson v. Ohio* (1988), 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300.

I

{¶ 6}  Beaty's appellate counsel raises one potential assignment of error, which states:

{¶ 7}  "WHETHER THE COURT ERRED IN FINDING NO FLAWS IN EFFECTIVENESS OF COUNSEL, POLICE QUESTIONING, DEFENDANT'S PLEAS, AND THE REASONABLENESS OF DEFENDANT'S SENTENCE SUFFICIENT TO COMPROMISE DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE *FIFTH*, *EIGHTH*, AND *FOURTEENTH AMENDMENT[S]* [TO] THE *UNITED STATES CONSTITUTION* AND *ARTICLE I SECTION 10* OF THE *OHIO STATE CONSTITUTION.*" (Emphasis in original.)

{¶ 8}  We will address the individual issues within that assignment of error separately.

{¶ 9}  First, appellate counsel raises the issue that Beaty's trial counsel failed to thoroughly investigate and properly prepare Beaty's case, such that Beaty was forced to enter a plea.

{¶ 10} We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136.  Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range

of reasonable assistance. *Strickland,* 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id.

{¶ 11} There is no indication in either appellate counsel's or Beaty's pro se brief as to what Beaty's trial counsel should have done, but did not. And, based on the record, it is unclear how a more thorough investigation by Beaty's trial counsel would have affected the outcome of Beaty's case. Beaty admitted to police officers and to the media that he had shot Singleton. There is no suggestion in the record that Beaty acted in self-defense, that the shooting was an accident, or that he had any other defense to the charges. If evidence of self-defense or some other defense exists, Beaty does not allege it in his pro se brief; regardless, it is outside the record and cannot be considered on direct appeal.

{¶ 12} Moreover, we find no basis to conclude that Beaty's trial counsel failed to properly prepare the case. Counsel moved to suppress Beaty's incriminating statements to the police.[1] The record reflects that there were extensive plea negotiations. In light of Beaty's confession to the police and public admission to the media that he had shot Singleton, counsel did not have a lot to work with. Accordingly, given the record before us, we agree that there is no

---

[1] The suppression motion was inadvertently filed in Montgomery Case. No. 2009CR2404, Beaty's prior case for possession of cocaine. Beaty's trial counsel orally renewed the motion to suppress in this case. A hearing was held, and the motion was denied.

potentially meritorious claim of ineffective assistance of counsel based on counsel's alleged failure to investigate Beaty's case more thoroughly and to properly prepare his case.

{¶ 13} Second, appellate counsel raises whether the trial court erred in concluding that Beaty knowingly, intelligently, and voluntarily waived his *Miranda* rights during police questioning and thus denying his motion to suppress.

{¶ 14} In addressing a motion to suppress, the trial court assumes the role of the trier of fact. *State v. Morgan,* Montgomery App. No. 18985, 2002-Ohio-268, citing *State v. Curry* (1994), 95 Ohio App.3d 93, 96. The court must determine the credibility of the witnesses and weigh the evidence presented at the hearing. Id. In reviewing the trial court's ruling, an appellate court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. Id. However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.

{¶ 15} In *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court held that the State may not use statements stemming from a defendant's custodial interrogation unless it demonstrates the use of procedural safeguards to secure the defendant's privilege against self-incrimination. Id. at 444. In order for a defendant's statements made during a custodial interrogation to be admissible, the State must establish that the accused knowingly, voluntarily, and intelligently waived his or her rights. *Miranda,* supra; *State v. Edwards* (1976), 49 Ohio St.2d 31, 38, overruled on other grounds, (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155.

{¶ 16} Even when an individual is not in custody and *Miranda* warnings are not required, a defendant's statement may be involuntary and subject to exclusion. *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, ¶14, citing *Dickerson v. United States* (2000), 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405. "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Edwards*, 49 Ohio St.3d 31, paragraph two of the syllabus. A defendant's statement to police is voluntary absent evidence that his will was overborne and his capacity for self-determination was critically impaired due to coercive police conduct. *Colorado v. Spring* (1987), 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954; *State v. Otte*, 74 Ohio St.3d 555, 562, 1996-Ohio-108.

{¶ 17} Detective Michael DeBorde was the sole witness at the hearing on Beaty's motion to suppress his statements to the police. His testimony, which the trial court credited, established the following facts.

{¶ 18} At approximately 10:40 a.m. on December 4, 2009, Detective DeBorde and Detective Darryl Smith interviewed Beaty in a police interview room regarding a shooting that had happened the night before. The room was approximately five feet square with a tile floor and no windows; there was a small table with three chairs. DeBorde did not recall if Beaty was initially handcuffed, but he stated that he would have asked for any handcuffs to be removed or he would have removed them himself.

{¶ 19} The detectives entered the room, introduced themselves, and told Beaty that they were there to interview him regarding a felonious assault. Beaty asked what felonious assault meant, and DeBorde explained that to him. The detectives asked Beaty if he were injured and obtained certain personal information, such as Beaty's name, address, birthday, phone number, and Social Security number. Beaty was nineteen years old and had ten years of schooling. DeBorde also knew from a computer search prior to the interview that Beaty had prior contacts with the police.

{¶ 20} The detectives presented Beaty with a Pre-Interview form. DeBorde wrote Beaty's identifying information, as well as the date, interview location, and offense, on the form. DeBorde asked Beaty if he could read; Beaty indicated that he could. DeBorde asked Beaty to read the first line of the form out loud. Beaty complied. DeBorde read each right to Beaty. Beaty indicated that he understood each right, and he agreed to talk with the detectives without an attorney. Beaty signed the Pre-Interview form. DeBorde testified that he did not promise Beaty anything or threaten Beaty.

{¶ 21} The detectives spoke with Beaty for twenty to thirty minutes. DeBorde described Beaty as "very open" with the officers. Beaty informed them that he had been at Gilcy Market and that he had brought cocaine into the store. Beaty left the store to answer a cell phone call and, when he returned, his found that his cocaine was missing. Beaty blamed Singleton, who was supposedly sweeping the store. Beaty related that he retrieved a handgun that he had placed in a newsstand inside the market and threatened Singleton with it. Beaty then

looked through trash cans for the cocaine. Beaty left the market and waited for Singleton to leave. Beaty admitted that he shot Singleton when Singleton came out of the store. The detectives asked Beaty if he wished to make a written or video statement; Beaty declined.

{¶ 22} The record supports the trial court's conclusions that Beaty knowingly, intelligently, and voluntarily waived his *Miranda* rights and that his statements were made voluntarily. Beaty could read the Pre-Interview form, he was read his rights, he agreed to speak to the officers without an attorney, and he signed the Pre-Interview form. There is no evidence that Beaty was under the influence of drugs or alcohol or was otherwise impaired. Beaty was not handcuffed, and there is no evidence of threats or coercion by the detectives. The interview lasted no more than 30 minutes. In short, we find no arguably meritorious argument that the trial court erred in denying Beaty's motion to suppress.

{¶ 23} Third, appellate counsel raises whether the State presented sufficient facts at the plea hearing to support Beaty's no contest plea. Because Beaty did not raise this argument at the plea hearing, we review this issue for plain error. *State v. Peoples*, Miami App. No. 2005 CA 20, 2006-Ohio-4162, ¶11. "To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings." *State v. Landgraf*, Montgomery App. No. 21141, 2006-Ohio-838, ¶24, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68.

{¶ 24} The requirements for a no contest plea in felony cases differ from those for a no contest plea in misdemeanor cases. Pursuant to R.C. 2937.07, the trial court in a misdemeanor case is required to hear an explanation of the

circumstances surrounding the offense and then determine whether the facts are sufficient to convict on the misdemeanor offense. See *State v. Adams*, Montgomery App. No. 22493, 2009-Ohio-2056, ¶14. The Supreme Court of Ohio has held that "the provision in R.C. 2937.07 requiring an explanation of circumstances following a plea of no contest [in a misdemeanor case] has not been superseded by the enactment of Crim.R. 11 because the statutory provision confers a substantive right." *Cuyahoga Falls v. Bowers* (1984), 9 Ohio St.3d 148, 151.

{¶ 25} R.C. 2937.06(A)(1) does not authorize a no contest plea in felony cases. See *Landgraf* at ¶20, n.1 (commenting that there appears to be no statutory provision in Ohio for no contest pleas in felony cases). However, Crim.R. 11 "permits a plea of no contest to a criminal charge, and does not require an explanation of the circumstances. Instead, the rule permits the court to enter judgment only based upon the facts as alleged in the indictment." *Adams* at ¶14. "Where an indictment, information, or complaint contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense." *State v. Bird*, 81 Ohio St.3d 582, 1998-Ohio-606.

{¶ 26} At the plea hearing, the prosecutor read the charges and specifications against Beaty, using the language of the indictment. Because the charges against Beaty were felonies, the trial court was permitted to find Beaty guilty based on the facts as alleged in the indictment; the trial court was not required to hear an explanation of the circumstances surrounding the offense. Beaty's potential claim based on the State's alleged failure to present sufficient

facts at the plea hearing is frivolous.

{¶ 27} Fourth, appellate counsel raises a potential claim that Beaty's plea was not knowingly, intelligently, and voluntarily made. Counsel notes that the plea hearing occurred while the jury waited outside the courtroom.

{¶ 28} "Crim.R. 11(C)(2) requires the court to (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty [or no contest] and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself." *State v. Brown*, Montgomery App. No. 21896, 2007-Ohio-6675, ¶3. See, also, *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶27.

{¶ 29} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *Clark* at ¶29. However, because Crim.R.11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. E.g., *State v. Nero* (1990), 56 Ohio St.3d 106, 108; *Greene* at ¶9. The trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶31.

{¶ 30} We have reviewed the transcript of the plea hearing and find nothing to support a contention that Beaty's pleas were not made knowingly, intelligently, and voluntarily. The trial court ascertained that Beaty had ten years of education, could read and understand the plea forms, and that there was nothing that would interfere with his understanding the forms and the proceedings. The trial court determined that Beaty understood the nature of the charges and the potential penalties. The court informed Beaty that he was eligible for community control for having weapons while under disability, but not felonious assault; the court told Beaty that he would not receive community control. The court further informed him that the plea would constitute a violation of his community control and that community control would be revoked. The court explained each of Beaty's constitutional rights and determined that Beaty understood that he was waiving those rights by entering his no contest plea. Beaty indicated that he wanted to plead no contest to the charges. The court found that Beaty's plea was knowing, intelligent and voluntary. The record demonstrates that the trial court's plea hearing complied with the requirements of Crim.R. 11.

{¶ 31} As noted by appellate counsel, the one issue that arose at the plea hearing concerned whether Beaty was satisfied with his attorney. A few weeks before the plea hearing, Beaty had filed a pro se motion for a new attorney based on ineffective assistance of counsel. Beaty wrote that he didn't "feel Mr. Goraleski is thinking about my best interest and [I] don't trust him. I feel he aint got time for my case and he is just trying to get it over with as fast as he can." We see no indication that the trial court ruled on this motion.

{¶ 32} At the plea hearing, Beaty had the following exchange with the trial court:

{¶ 33} "THE COURT: Are you satisfied with Mr. Goraleski's representation?

{¶ 34} "THE DEFENDANT: No.

{¶ 35} "THE COURT: Why not?

{¶ 36} "THE DEFENDANT: I just – I just – just not.

{¶ 37} "THE COURT: Well, what did you want him to do?

{¶ 38} "THE DEFENDANT: It's over with now.

{¶ 39} "THE COURT: Huh?

{¶ 40} "THE DEFENDANT: I said it's over with now.

{¶ 41} "THE COURT: No.   ***   Because if you feel that you're doing something here today that you feel is not appropriate, then we're not going to do this.

{¶ 42} "THE DEFENDANT: I didn't – I ain't saying what I was doing right now –

{¶ 43} "THE COURT: Well, what is it --

{¶ 44} "THE DEFENDANT:   – ain't appropriate.

{¶ 45} "THE COURT:   – about his representation that you're not satisfied with?   It's my understanding, sir, and I'm going to be real blunt with you; okay?   I mean, I saw what you said on TV.   You know, in front of two television cameras, you admitted that you shot the guy.   Okay?   You talked with the detective.   You made a statement, admitted it.   What is it that you expected him to do?

{¶ 46} "THE DEFENDANT: It was nothing.

{¶ 47} "THE COURT: There was nothing?

{¶ 48} "THE DEFENDANT: No, ma'am.

{¶ 49} "THE COURT: Then why is it that you're not satisfied with his representation?

{¶ 50} "THE DEFENDANT: It's fine.

{¶ 51} "THE COURT: All right.  Sir, are you entering your pleas today voluntarily?   That means is this what you want to do?

{¶ 52} "THE DEFENDANT: Yes, ma'am."

{¶ 53} We do not find that this exchange creates an arguable issue that Beaty's plea was involuntarily.  Although Beaty apparently believed that his counsel should have done more on his case, he did not articulate for the court how his counsel was allegedly ineffective.  With respect to the plea, Beaty did not express that he disagreed with the decision to enter a no contest plea.  To the contrary, he told the trial court that he was not saying that the plea was inappropriate and that he wanted to enter his plea.  We find no potentially meritorious claim that Beaty's plea was not knowing, intelligent, and voluntary.

{¶ 54} Although not explicitly raised by Beaty in his pro se brief or by appellate counsel as part of his "issue" that the plea was not knowingly made, we further note that the trial court told Beaty that he was ineligible for community control for the felonious assault, even though the law permitted such a sentence. See *State v. Swimer*, Clark App. No. 08 CA 38, 2009-Ohio-903, ¶48.   Presumably, the trial court was focusing on the firearm specification attached to those counts, which had a mandatory prison sentence.   Beaty was properly informed by the trial

court that he was eligible for community control for having weapons while under disability.

{¶ 55} Beaty elected to plead no contest despite being informed that he was ineligible for community control for felonious assault. Because community control is a less severe punishment than prison, Beaty could not have detrimentally relied on the trial court's misstatement in deciding whether to enter a plea. Moreover, the trial court made clear that Beaty would not receive community control in this case. We find no potentially meritorious argument that the trial court's misstatement regarding Beaty's eligibility for community control for felonious assault affected the voluntariness of Beaty's plea. See *State v. Kennedy*, Champaign App. No. 2011 CA 3, 2011-Ohio-4291, ¶61 (finding that trial court's misstatement that defendant would receive a mandatory jail term was not prejudicial where the actual sentence would be less severe than what the trial court outlined).

{¶ 56} Fifth, appellate counsel raises that Beaty sent a letter to the court prior to sentencing, seeking to withdraw his plea due to ineffective assistance of counsel. Beaty claimed that his counsel did not prepare for trial, failed to investigate the facts of the case, provided false information to him, and coerced him to enter a plea. Beaty further stated that he was not permitted to participate in the selection of the jury.

{¶ 57} A defendant's motion to withdraw a plea, made before sentencing, should be freely and liberally granted, provided the movant demonstrates a reasonable and legitimate basis for the withdrawal. *State v. Xie* (1992), 62 Ohio St.3d 521, 526. However, a defendant does not have an absolute right to withdraw

his plea prior to sentencing. Id. A trial court must hold a hearing on the motion to determine if a reasonable and legitimate basis exists for the withdrawal. Id.; *State v. Bennett*, 192 Ohio App.3d 608, 2011-Ohio-961, ¶9. A trial court may satisfy the requirement for a full and fair hearing on a motion to withdraw a plea by allowing the defendant and his attorney to speak at a sentencing hearing and to explain the basis for the motion. *Bennett* at ¶10; *State v. Burnett*, Montgomery App. No. 20496, 2005-Ohio-1036, ¶20-21. The decision whether to grant or deny a presentence request to withdraw a guilty plea is a matter resting within the trial court's sound discretion. *Xie*, 62 Ohio St.3d at 526. Such decisions will not be disturbed on appeal absent a showing that the trial court abused its discretion by acting in an unreasonable, arbitrary, or unconscionable manner. Id.

**{¶ 58}** "No abuse of discretion in denying a presentence motion to withdraw a plea is demonstrated where: (1) the accused is represented by highly competent counsel, (2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before entering the plea, (3) after the motion to withdraw is filed the accused is given a complete and impartial hearing on the motion, and (4) the record reveals that the trial court gave full and fair consideration to the plea withdrawal request." *State v. Chavez*, Montgomery App. No. 22892, 2009-Ohio-3758, ¶61, citing *State v. Peterseim* (1980), 68 Ohio App.2d 211.

**{¶ 59}** At the sentencing hearing, the trial court began by addressing Beaty's pro se motion to withdraw his plea. The court told Beaty that he would go to trial immediately if he were permitted to withdraw his plea, and that the court was willing to schedule a hearing on the motion. The court stated repeatedly that having a

hearing on the motion did not mean that the motion would be granted. Beaty and his trial counsel conferred twice. When Beaty expressed confusion to the trial court, the court stated:

{¶ 60} "THE COURT: It means I haven't made up my mind. You filed a motion – anybody's free to file a motion at any time if they want to.

{¶ 61} "THE DEFENDANT: Right.

{¶ 62} "THE COURT: Okay? Just because you have a hearing on it doesn't mean your motion's going to be granted. Just because you asked to withdraw your plea doesn't mean that it's going to happen.

{¶ 63} "THE DEFENDANT: All right.

{¶ 64} "THE COURT: All right? If you want to have a hearing on it, I'll set it for hearing next week. I'll make a decision on it then.

{¶ 65} "THE DEFENDANT: I mean, we can just – we can just forward with sentence.

{¶ 66} "THE COURT: Is that what – so you're saying on the record you want to go forward with sentencing? You're asking to withdraw your motion to withdraw your plea; is that right?

{¶ 67} "THE DEFENDANT: Yes.

{¶ 68} "THE COURT: Is that what you want to do?

{¶ 69} "THE DEFENDANT: Yes."

{¶ 70} We find no arguably meritorious issues related to Beaty's motion to withdraw his plea. At the beginning of the sentencing hearing, the trial court noted that a motion to withdraw Beaty's plea had been filed, and the court repeatedly

offered Beaty the opportunity for an evidentiary hearing on that motion. The record reflects that Beaty voluntarily withdrew his motion after conferring with counsel and discussing the motion with the trial court. The trial court did not pressure Beaty into withdrawing the motion; it merely emphasized that scheduling a hearing on the motion did not guarantee that the motion would be granted. And because Beaty's motion was withdrawn, the record does not include any evidence demonstrating that Beaty had a reasonable and legitimate basis for his motion.

{¶ 71} Finally, appellate counsel raises whether Beaty's sentence was an abuse of discretion. We review a felony sentence using a two-step procedure. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶4. "The first step is to 'examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.'" *State v. Stevens*, 179 Ohio App.3d 97, 2008-Ohio-5775, ¶4, quoting *Kalish* at ¶4. "If this step is satisfied, the second step requires that the trial court's decision be 'reviewed under an abuse-of-discretion standard.'" Id.

{¶ 72} Beaty pled no contest to felonious assault, a second degree felony with a maximum sentence of eight years, and having weapons while under disability, a third degree felony with a maximum sentence of five years. Beaty received five years for felonious assault and three years for having weapons while under disability, to run concurrently. Each of these sentences is within the sentencing range. And, as required by law, Beaty received three years for the firearm specification, to be served prior to and consecutive to the sentences for the

offenses.   Beaty's sentence was not contrary to law.

{¶ 73} The record reflects that Beaty shot the victim because he believed the victim had stolen his drugs.   At the time of the shooting, Beaty had been on community control in another case for less than a month.   Considering the circumstances of the crime and the mid-range, concurrent sentences that Beaty received, Beaty has no potentially meritorious challenge to the length of his sentences.

{¶ 74} In his pro se brief, Beaty raises several of the issues that were included in appellate counsel's brief.   We have already addressed those issues and will not repeat our analysis. He also raises several additional arguments, which we will address separately.

{¶ 75} Beaty asserts that he filed a motion to suppress the news footage and that his motion was denied.   The record does not contain such a motion.   And we cannot conclude, based on the record before us, that such a motion would have been successful even if it had been filed.

{¶ 76} Beaty next claims that the trial court found him guilty because the judge had seen the news footage.   It is unclear what Beaty means by this claim. Perhaps Beaty is arguing that the trial court's reference at the plea hearing to Beaty's admission to the media meant that the court was predetermined to find him guilty, regardless of whether he entered a plea or went to trial.   Or perhaps Beaty means that the court would not allow him to withdraw his plea "[n]o matter what was said" at a hearing on that motion.

{¶ 77} "A judge is presumed to follow the law and not to be biased, and the

appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, ¶5; *Rejas Invests. v. Natl. City Bank,* Montgomery App. No. 21243, 2006-Ohio-5586, ¶98. Intermediate appellate courts, such as this one, have no jurisdiction to disqualify a judge based on claims of bias; such claims must be brought to the Chief Justice of the Ohio Supreme Court. See *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441-442. If there were a concern about judicial bias, Beaty should have raised the issue at that time and not waited for the appeal. *Janis v. Janis*, Montgomery App. No. 23898, 2011-Ohio-3731, ¶95.

{¶ 78} Regardless, it is apparent that the trial court commented on the news footage during the plea hearing in order to emphasize that the State had a strong case against him based on his own confessions and to question Beaty on how he believed his counsel should have proceeded. Prior to this exchange, the trial court had informed Beaty that, "based upon the facts in the indictment and the plea itself, the Court will proceed to a judgment of guilty on all three counts and set your case for sentencing on April 21st." We find no reasonable argument that Beaty's conviction was based on judicial bias.

{¶ 79} Beaty also claims that he was not permitted to participate in jury selection and that the jury was tainted because they were in the same hallway as Beaty, his mother, and his trial counsel when Beaty's counsel advised him to enter a plea. The trial court began the plea hearing by stating: "The record should reflect that the jury is present and we're prepared to get started with the trial ***." However, it is unclear from the record whether the trial court was referring to

potential jurors who had responded to the court's summons or whether a jury had already been selected. Even assuming that a jury had been selected, Beaty has not provided a transcript of the jury selection portion of his trial. Consequently, the record does not portray the error that Beaty alleges. Moreover, there is no evidence, and it is extremely doubtful, that any jurors (potential or selected) were present during the plea discussion. And considering that Beaty's case did not go to trial, Beaty has not demonstrated how he was prejudiced by these alleged errors.

{¶ 80} Finally, Beaty claims that he was sentenced two days after the scheduled trial date, without having entered a plea, in front of the news media. Beaty entered a no contest plea on April 5, 2010, after a proper Crim.R. 11 plea hearing. The plea forms were signed by Beaty and his trial counsel. Beaty was brought before the court for sentencing on April 28, 2010. He returned to the court on July 21, 2010, after the trial court was informed that the original judgment entry was not a final appealable order because it failed to specify the amount of restitution. Beaty's assertion that he was found guilty without a plea and was sentenced two days later is frivolous.

{¶ 81} In addition to reviewing the issues raised by Beaty's appellate counsel and by Beaty in his pro se brief, we have conducted an independent review of the trial court's proceedings and have found no potential assignments of error having arguable merit. The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Laura M. Woodruff
Richard A. Nystrom
Joshua L. Beaty
Hon. Mary Katherine Huffman