[Cite as *State v. Givens*, 2016-Ohio-4978.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26782 |
| | : | |
| v. | : | T.C. NO. 15CR763 |
| | : | |
| ALYSA N. GIVENS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____15th___ day of ____July____, 2016.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BRENT E. RAMBO, Atty. Reg. No. 0076969, 15 W. Fourth Street, Suite 250, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} After the trial court overruled her motion to suppress evidence, Alysa Givens pled no contest to engaging in solicitation after a positive HIV test, in violation of R.C. 2907.24(B), a third-degree felony. A charge of loitering to engage in solicitation after a positive HIV test, in violation of R.C. 2907.241(A)(3) and (B), a fifth-degree felony, was dismissed. Givens was sentenced to community control for a period not to exceed five

years.

{¶ 2} Givens appeals from her conviction, claiming that the trial court erred in denying her motion to suppress. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 3} At the suppression hearing, the parties agreed that, in lieu of testimony, the court would resolve the motion to suppress based on four exhibits: (1) a copy of a video-recording from the Dayton police cruiser into which Givens was placed upon her arrest (due to an equipment malfunction, the recording did not include any audio); (2) a copy of the pre-interview rights card that was used to notify Givens of her *Miranda* rights; (3) a certified copy of the search warrant for Givens's medical records; and (4) Dayton Police Department Report No. 1503120992, which contained synopses by three detectives of what occurred. The evidence established the following facts.

{¶ 4} During the week of March 9, 2015, Detective Gordon Cairns of the Dayton police department and other detectives from the Street Crimes Unit investigated complaints of alleged prostitution activity in the area of East Third Street in Dayton. The detectives received information from several sources that a woman named "Allie," who had dark hair and was wearing a pink jacket and jeans, was engaging in prostitution after having been diagnosed with HIV. Givens had been observed on East Third Street during that week, and on March 11, 2015, she was seen wearing a pink jacket and jeans.

{¶ 5} At approximately 2:18 p.m. on March 12, 2015, Detective Cairns, working undercover in an unmarked vehicle, located Givens at the intersection of East Third Street and South Jersey Street, staring, smiling, and waving at passing vehicles; Cairns

indicated that such behavior was consistent with a prostitute summoning a "john." Cairns informed Detective John Howard that he intended to approach Givens.

{¶ 6} At approximately 2:20 p.m., Detective Cairns stopped along the west curb of southbound South Jersey Street. Givens approached the passenger side of the vehicle and, without invitation, entered the vehicle through the front passenger door. Detective Cairns drove south with Givens. After apparently satisfying herself that Detective Cairns was not a police officer, Givens agreed to perform oral sex without a condom for $25. Detective Howard monitored the conversation from another vehicle.

{¶ 7} Detective Cairns drove with Givens to a particular parking lot that the detectives had prearranged to be an arrest location. Detectives Howard and Gustwiller also went to that location, and two uniformed officers were asked to come and assist with Givens's arrest. Detective Howard removed Givens from Cairns's vehicle, patted Givens down (nothing was located), and asked Givens for her name, address, and the name of the driver of the vehicle in which she was found (Givens claimed the driver was a friend).[1] Detective Howard read Givens her *Miranda* rights using a card provided by the prosecutor's office, and he began to interrogate her about the agreed sexual transaction; the parties agree that Givens was properly notified of her *Miranda* rights. Ultimately, Detective Howard handcuffed Givens and advised her that she was under arrest.

{¶ 8} Givens stated several times that she was sorry and wanted to help. After placing Givens in handcuffs, Detective Howard asked Givens if she had HIV or AIDS or

---

[1] The trial court found that Detective Cairns "removed Defendant from the vehicle, performed Defendant's patdown, and obtained Defendant's personal identifiers." Both Detective Cairns's and Detective Howard's reports indicate that Detective Howard performed these actions.

any other disease about which he should be aware. Givens responded that she did not. Howard directed Givens to sit on the front bumper or hood of his unmarked vehicle.

{¶ 9} Thereafter, Detective Gustwiller interviewed Givens regarding the encounter and whether Givens took a "cocktail" of drugs for HIV. Givens responded in the affirmative, although Detective Howard stated that she may have believed that "cocktail" referred to illegal drug use. Subsequently, Detective Howard placed Givens in the backseat of a police cruiser.

{¶ 10} After a few seconds, Detective Howard spoke with Givens as she sat in the cruiser. During this conversation, Howard "asked Givens did she have HIV and or AIDS. I explained to Givens that it was against the law to work as a prostitute after testing positive for HIV. I did tell Givens it's also against the [law] to lie to the police about HIV." Givens started to cry and acknowledge that she was HIV positive. Howard walked away from the cruiser.

{¶ 11} Detective Gustwiller approached the cruiser and spoke with Givens again. She told him that she had been tested for HIV at Miami Valley Hospital and had been positive for six months. Gustwiller asked for the number of men with whom she had engaged in sexual intercourse over the past six months. At that point, Givens stated that she did not wish to speak further with Detective Gustwiller. Approximately five minutes had elapsed from the time that Givens was placed into the cruiser until the she ended the interview with Gustwiller.

{¶ 12} At 2:44 p.m., Givens was transported to the Montgomery County Jail. Approximately 24 minutes had elapsed since Givens entered Detective Cairns's vehicle.

{¶ 13} The next day, on March 13, 2015, Detective Gustwiller obtained a search

warrant for Givens's medical records and lab reports at Miami Valley Hospital. Gustwiller's affidavit for the search warrant outlined the investigation of Givens including: 1) the officer's experience handling street prostitution cases; 2) the information provided to Detective Cairns regarding the clothing and description of the alleged HIV positive prostitute; 3) the fact that Detective Cairns found a woman -- Givens -- matching that description; 4) Givens's statements to Detective Cairns during the attempted transaction; and 5) Givens's statements after she was *Mirandized*, including statements regarding her HIV status and where she had been tested for HIV. The search warrant was executed the same day (March 13). According to Detective Gustwiller's police report, the hospital records indicated that Givens had tested positive for HIV on November 20, 2013.

{¶ 14} On March 19, 2015, Givens was indicted for engaging in solicitation after a positive HIV test and loitering to engage in solicitation after a positive HIV test, both based on the March 12 incident. Two weeks later, Givens moved to suppress the statements she had made to the police on March 12 and any evidence derived from those statements, including evidence obtained pursuant to the search warrant for her medical records. Givens claimed that her statements to the police were made involuntarily.

{¶ 15} A hearing on the motion to suppress was scheduled for July 10, 2015, but the parties agreed at the hearing that the motion would be resolved based on the four exhibits described above. No testimony was taken.

{¶ 16} On July 22, 2015, the trial court overruled the motion to suppress. Initially, the trial court noted that defense counsel had agreed that Givens was properly advised of her *Miranda* rights. As to the voluntariness of Givens's statements, the trial court concluded that Givens's will was not overborne by Detective Howard's statement that it

was a crime to lie to police regarding one's HIV status. The court reasoned that the officer did not misstate the law, and it cited R.C. 2921.31 (obstructing official business) and R.C. 2921.32(A) (obstructing justice). The court further found that (1) the police had made no threats, promises, or offers of leniency, (2) no weapons were drawn or displayed, (3) Givens never asked for an attorney, (4) Givens was not under the influence of drugs or alcohol and provided appropriate answers, (5) the interview in the cruiser lasted approximately five minutes, (6) Givens's entire encounter with the police lasted less than one hour, and (7) Givens ended the interview when she no longer wished to speak with Detective Gustwiller.

{¶ 17} In addition, the trial court found no basis to suppress the evidence obtained pursuant to the search warrant. The court stated that there was a substantial basis for the magistrate to conclude that probable cause existed for the warrant and, even if Givens's statement regarding her HIV should have been suppressed, the remainder of the affidavit provided probable cause for the warrant.

{¶ 18} The day after the trial court's ruling on her motion to suppress, Givens pled no contest to engaging in solicitation after a positive HIV test. She was subsequently sentenced to community control. Givens appeals the trial court's judgment.

## II. Voluntariness of Statements to Police

{¶ 19} On appeal, Givens claims that the trial court erred in overruling the motion to suppress "because the statements made by the Appellant were not made knowingly, intelligently, and voluntarily." Givens asserts that Detective Howards's statement that it was "against the [law] to lie to the police about having HIV" was a threat of additional charges if Givens did not confess to having HIV, and that the evidence indicated that

Givens was under the influence of drugs and alcohol at the time of her arrest. Givens further argues that, because her statements should have been suppressed, there was also an insufficient basis to issue a search warrant for her medical records.

{¶ 20} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id*.

{¶ 21} Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself or herself. In order to ensure that this right is protected, statements resulting from custodial interrogations are admissible only after a showing that the procedural safeguards described in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been followed. *In re R.L.*, 2014-Ohio-5065, 23 N.E.3d 298, ¶ 17 (2d Dist.), citing *In re Haubeil*, 4th Dist. Ross No. 01CA2631, 2002-Ohio-4095, ¶ 9.

{¶ 22} Whether a statement was made voluntarily and whether an individual knowingly, voluntarily, and intelligently waived his or her *Miranda* rights are distinct issues. *State v. Eley*, 77 Ohio St.3d 174, 178, 672 N.E.2d 640 (1996); *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305. Regardless of whether *Miranda*

warnings were required and given, a defendant's statement may have been given involuntarily and thus be subject to exclusion. *Kelly* at ¶ 11.

{¶ 23} A defendant's statements to police after a knowing, intelligent, and voluntary waiver of the individual's *Miranda* rights are presumed to be voluntary. *Miranda*, *supra*. "The *Miranda* presumption applies to the conditions inherent in custodial interrogation that compel the suspect to confess. It does not extend to any actual coercion police might engage in, and the Due Process Clause continues to require an inquiry separate from custody considerations and compliance with *Miranda* regarding whether a suspect's will was overborne by the circumstances surrounding his confession." *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 14 (2d Dist.), citing *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

{¶ 24} "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *overruled on other grounds*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). *See also State v. Brewer*, 48 Ohio St.3d 50, 58, 549 N.E.2d 491 (1990); *State v. Beaty*, 2d Dist. Montgomery No. 24048, 2011-Ohio-5014, ¶ 16.

{¶ 25} In general, the State has the burden to show by a preponderance of the evidence that a defendant's confession was voluntarily given. *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978).

{¶ 26} We have reviewed the exhibits submitted by the parties, and we agree with

the trial court that Givens's statements were made voluntarily. At the time of the offense, Givens was 26 years old, and the Police Incident Report reflects that she had 12 "FICs"[2] and five prior arrests; Detective Cairns indicated that a check of Givens's record on the JusticeWeb computer system showed no prior arrests for prostitution. There is no evidence that Givens had any mental impairment.

{¶ 27} Detective Howard's synopsis indicated that Givens had a "drug habit" and that she admitted to taking a "cocktail" of some sort. Detective Howard wrote, "Detective Gustwiller and I learned from Givens that she did see a doctor several months ago and the doctor did give her some medication to take. Detective Gustwiller asked Givens was the medication called a 'cocktail' which Gives [sic] stated said, Yes. Givens was questioned about the name of the drugs. Givens stated she thought he was talking about drugs and her drug habit, and she was taking any medication." Although Howard's synopsis reflects that Givens took drugs, there is no indication from the record that Givens was under the influence of drugs or alcohol when she was questioned by the police on March 12.

{¶ 28} Givens's encounter with the police began at 2:20 p.m., when she entered Detective Cairns's unmarked vehicle, and the detectives' questioning ended at 2:44 p.m., when uniformed officers began transporting her to the Montgomery County Jail; Givens spoke with the detectives for no more than 24 minutes. The cruiser video and the detectives' synopses indicate that detectives spoke with Givens over several short sequences.

---

[2] We have described an FIC as "a notation made by a police officer and placed in their computer system, which indicates a prior 'run in' with the police." *State v. Groves*, 156 Ohio App.3d 205, 2004-Ohio-662, 805 N.E.2d 146, ¶ 3, fn. 1 (2d Dist.).

{¶ 29} The first two conversations in the parking lot with detectives were not captured by the cruiser video. The first conversation occurred after Detective Howard removed Givens from Detective Cairns's unmarked car. Givens provided identifying information about herself to Detective Howard and was read her *Miranda* rights; Givens was willing to speak with the officers. Givens was briefly questioned about whether she had agreed provide oral sex for $25. After Givens stated that she didn't know if she should say anything, Detective Howard handcuffed Givens and told her that she was under arrest. Howard asked Givens if she had "Hep-C, AIDS, HIV or any other disease that [he] should beware of about," and Givens responded that she did not.

{¶ 30} The second conversation occurred while Givens was seated on the front bumper/hood of Howard's unmarked police car. Detective Gustwiller asked Givens questions about the proposed sexual transaction, whether Givens had any sexually transmitted diseases, and whether she was taking medication. At 2:38 p.m. (according to the cruiser video), after this brief discussion, Givens was placed into the back of a marked cruiser.

{¶ 31} At 2:39, Howard spoke again with Givens. During this conversation, Howard "explained to Givens that it was against the law to work as a prostitute after testing positive for HIV * * * and it's also against the [law] to lie to the police about having HIV." Givens admitted to having HIV. This conversation lasted approximately one minute.

{¶ 32} Detective Gustwiller again spoke with Givens at 2:41 p.m., asking additional questions about where Givens was tested for HIV and how many men Givens had "slept with in the last 6 months." Gustwiller's conversation with Givens lasted approximately

one and one-half minutes.

{¶ 33} Nothing on the cruiser video or in the synopses indicate that the officers engaged in any conduct that would render Givens's statements involuntary. While Givens was in the cruiser, the detectives spoke with Givens while standing outside the rear passenger door across from where Givens was seated; the door was open. Although no audio is available, nothing in the detectives' posture or mannerisms appeared to be threatening.

{¶ 34} Givens asserts that Detective Howard's statement that it was "against the [law] to lie to the police about having HIV" was a threat that induced her to admit to having HIV. "Generally, a correct statement of the law does not rise to the level of coercion necessary to render a confession involuntary." *State v. Robinson*, 9th Dist. Summit No. 16766, 1995 WL 9424 (Jan. 11, 1995); *see also State v. Western*, 2015-Ohio-627, 29 N.E.3d 245, ¶ 38 (2d Dist.).

{¶ 35} Detective Howard correctly told Givens that it was against the law to work as a prostitute after testing positive for HIV, *see* R.C. 2907.24(B), and given that the officers were investigating an allegation of engaging in solicitation after a positive HIV test, Howard also correctly told Givens that it was against the law for her to lie to police officers about her HIV status. The Ohio Supreme Court has held generally that "[t]he making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of R.C. 2921.13(A)(3) [falsification] and 2921.31(A) [obstructing official business]." *State v. Lazzaro*, 76 Ohio St.3d 261, 667 N.E.2d 384 (1996); *see also, e.g., State v. Ertel*, 12th Dist. Warren No. CA2015-12-109, 2016-Ohio-2682 (sufficient evidence supported

defendant's conviction for obstructing official business based on defendant's repeated lies to responding officers); *State v. McLaughlin*, 2015-Ohio-4611, 48 N.E.3d 987 (2d Dist.) (sufficient evidence existed to support defendant's conviction for falsification based on defendant's lying to a police officer with the purpose of misleading him).

{¶ 36} Even if Detective Howard's statement were a misstatement of law, we do not conclude that Givens's will was overborne by Howard's statement that it was against the law to lie to the police about her HIV status. With the information before us, Detective Howard's statement was not said in such a way that it necessarily compelled a response from Givens. Howard's statement did not suggest, in any way, that she would face a negative consequence if she failed to answer his questions about her HIV status. In fact, the statement could have been construed as a warning to Givens that she should remain silent, rather than lie, if she did not want to reveal her HIV status. Moreover, Howard's statement did not suggest that Givens would receive more lenient treatment if she provided her HIV status to the officers.

{¶ 37} Considering the totality of the circumstances, the trial court did not err in concluding that Givens's statements to the police about her HIV status were made voluntarily. Given that conclusion, the trial court also did not err in denying Givens's request to suppress evidence subsequently obtained based on those statements. Givens's assignment of error is overruled.

### III. Conclusion

{¶ 38} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Michele D. Phipps
Brent E. Rambo
Hon. Steven K. Dankof