OPINION
[¶ 1} Antwaun Devon Brown pled guilty in the Montgomery County Court of Common Pleas to one count of trafficking in crack cocaine. In return, the state dismissed charges of possession of heroin and possession of criminal tools.[1] The court sentenced Brown *Page 2 
to an agreed sentence of three years in prison. Brown's driver's license was also suspended for three years. Brown appeals from his conviction. His sole assignment of error is as follows.
 {¶ 2} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ACCEPTING A PLEA OF GUILTY THAT WAS NOT KNOWINGLY AND FREELY GIVEN IN VIOLATION OF RULE 11(C)(2)(a) OF THE OHIO RULES OF CRIMINAL PROCEDURE."
 {¶ 3} "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim. R. 11(C)." State v.Greene, Greene App. No. 2005 CA 26, 2006-Ohio-480, ¶ 8. Crim.R. 11(C)(2) requires the court to (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.
 {¶ 4} Because Crim.R.11(C)(2)(a) and (b) involve non-constitutional rights, substantial compliance with those requirements is sufficient.State v. Nero (1990), 56 Ohio St.3d 106, 108, *Page 3 564 N.E.2d 474; Greene at ¶ 9. However, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights.
 {¶ 5} At the plea hearing, the trial court complied with each Crim.R. 11(C)(2) requirement. Brown was 21 years old at the time of the hearing, had finished high school, and could read and write. In response to the court's inquiries, Brown stated that he was entering his plea voluntarily, that he had not been threatened or forced to enter a plea, and that he had not been promised anything other than the terms of the plea agreement. The court explained that he could be sentenced to a maximum of eight years in prison for the offense, a fine up to $15,000, the suspension of his driver's license for a period of six months to five years, and post-release control for three years. The court further emphasized that a prison term was mandatory. After the state read the charge of trafficking in crack cocaine and after a discussion with his attorney, Brown indicated that he understood the nature of the offense. The court further informed Brown that, by entering the guilty plea, he was "admitting this charge" and that the court would sentence him following the plea. The court advised Brown that he had a right to a jury trial and that the plea would waive that right. The court explained that the state would have to prove his guilt beyond a reasonable doubt at trial, that he had a right to confront witnesses against him, that witnesses could be compelled to appear for trial by having subpoenas issued by the court, that he had the right to remain silent, and that no one could comment on his failure to testify if he chose not to take the witness stand. Brown stated that he understood that he was giving up his constitutional rights by entering his plea. Brown signed the plea form and indicated that he was pleading guilty to trafficking in cocaine.
 {¶ 6} On appeal, Brown asserts that his demeanor during the plea hearing demonstrated *Page 4 
that he did not understand the consequences of his plea. He states:
 {¶ 7} "A careful review of the videotape of the plea and sentencing hearing herein confirms that Brown did not knowingly enter his plea. He seldom looked at the trial court, electing instead to turn his head and body either sideways or to the rear of the Court. Further, none of his waiver responses appeared attentively given as he had to be asked the same questions multiple times. The dynamics between Brown and his trial counsel indicate that Brown was, ultimately, parroting whatever response he was directed to make."
 {¶ 8} Brown notes that he began the plea hearing by requesting a new attorney, indicating that he and his current attorney could not "see eye to eye." He further argues that the videotape of the hearing suggests that he may have been under the influence of drugs or medication at the time of his plea.
 {¶ 9} As noted by Brown, Brown indicated at the beginning of the plea and sentencing hearing that he could not communicate well with his attorney and that he was not sure if he wanted to proceed with the plea. Brown indicated that he wanted a second opinion about the proposed plea deal. The court responded that Brown "had time to have a second opinion," noting that Brown's counsel was his second attorney in this case and that he had had a third attorney in a companion case. The court told him that trial would proceed as scheduled in two weeks, and it indicated that it would revoke his bond pending trial. The court indicated that it felt as though Brown had been "playing games" with the court. Brown's attorney requested a brief recess, during which Brown spoke with his parents, his girlfriend, and his attorney. Afterward, Brown's attorney informed the court that Brown had decided to accept the plea and the agreed sentence of 36 months in prison and to accept sentencing that day. The court then *Page 5 
proceeded to take Brown's plea.
 {¶ 10} Although Brown initially stated that he did not see "eye to eye" with his attorney and wanted another opinion of the proposed plea, Brown indicated that he was willing to accept the plea after a discussion with his parents and his girlfriend. Brown consulted with his attorney repeatedly during the plea hearing and did not express any concerns about proceeding with his current counsel. We find no basis to conclude that Brown continued to have concerns about his attorney or accepting the plea agreement after that brief recess.
 {¶ 11} As stated above, Brown argues that his demeanor undermines the court's conclusion that he knowingly and voluntarily entered his plea. During the hearing, Brown spoke softly, and the court often asked him to "speak up." The court often repeated its questions prior to Brown responding. Throughout the hearing, Brown consulted with his attorney prior to answering the court's questions.
 {¶ 12} The record reflects that Brown needed additional explanation of the plea form and various legal terms. Initially, when the court asked Brown if he understood the plea forms, Brown said he did but asked the court if "[y]ou can make them more clear to me, though[.]" When Brown did not understand a question by the court, he indicated his lack of understanding and the court and his counsel spent additional time addressing that issue. When Brown had other questions, such as whether there would be restoration of good time credit and how long he would be held at the Montgomery County Jail, Brown was not afraid to ask the court. As summarized by the state:
 {¶ 13} "* * * [T]he video transcript shows that the court spoke slowly and clearly, often put legal terminology in layman's terms, and just generally spent a lot of time with Brown to *Page 6 
ensure that he had an adequate understanding of the nature of the charge, the maximum penalty involved, that he was not eligible for early release, post-release control, the effect of his plea, his constitutional rights and that he was waiving his rights by pleading guilty. Indeed, it is difficult to imagine what more the court could have done to satisfy itself that Brown's plea was voluntary, knowing, and intelligent."
 {¶ 14} Although Brown asserts that he was "parroting whatever response he was directed to make," that assertion is not borne out by the record.
 {¶ 15} Moreover, there is no evidence that Brown was under the influence of drugs or medication at the time of his plea. Although Brown repeatedly looked over his left shoulder during the hearing, it appears that his girlfriend was seated behind him and to his left. His behavior was consistent with a person who was unhappy about his predicament and, in particular, the prospect of three years in prison. In fact, he repeatedly asked about early release or good time credit. For example, Brown asked the court: "If — like you said I can't file for judicial release so there ain't nothing — that's nothing I can file for either the good behavior or nothing?" Although Brown often did not respond immediately to the court's questions, Brown intelligently expressed his concerns and asked questions.
 {¶ 16} In sum, the record demonstrates that Brown's guilty plea was given knowingly, voluntarily, and intelligently. We find no error in the trial court's acceptance of Brown's guilty plea.
 {¶ 17} Brown's sole assignment of error is overruled.
 {¶ 18} The judgment of the trial court will be affirmed.
FAIN, J. and DONOVAN, J., concur.
[1] Brown's plea agreement encompassed four separate cases, all involving drug charges. The plea agreement provided that Brown would plead guilty to one count in each case and all of the sentences would run concurrently to the sentence in this case. *Page 1