[Cite as *State v. Carter*, 2014-Ohio-4856.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                    :

     Plaintiff-Appellee               :     C.A. CASE NO.     2013 CA 115

v.                                               :     T.C. NO.     12CR112

DEE CARTER                                       :     (Criminal appeal from
                                             Common Pleas Court)

     Defendant-Appellant              :


                                                 :

                        . . . . . . . . . .

                        **O P I N I O N**

            Rendered on the ____31st____ day of ____October____, 2014.

                        . . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
     Attorney for Plaintiff-Appellee

DANIEL A. PERRY, Atty. Reg. No. 0087548, 123 Boggs Lane, Cincinnati, Ohio 45246
     Attorney for Defendant-Appellant

                        . . . . . . . . . .

FROELICH, P.J.

{¶ 1}   Dee Carter pled guilty in the Clark County Court of Common Pleas to one count of gross sexual imposition, a fourth-degree felony, in exchange for which the State dismissed one count of rape.   The parties agreed to an eleven-month sentence and that Carter would receive credit for time served in jail while the case was pending (348 days), which exceeded eleven months.   The trial court imposed the agreed eleven-month sentence, informed Carter that he would be subject to five years of post-release control, and ordered him to pay court costs.   Carter was designated a Tier III sex offender.

{¶ 2}   Carter appeals from his conviction, claiming that the trial court erred in accepting his guilty plea and that his counsel rendered ineffective assistance.   For the following reasons, the trial court's judgment will be affirmed.

## I.   Defendant's Guilty Plea

{¶ 3}   Carter's first assignment of error states:

The trial court erred by failing to properly inform and ensure that the defendant-appellant understood his constitutional rights prior to accepting defendant-appellant's waiver and guilty plea, and continuing to accept defendant-appellant's guilty plea after defendant-appellant made known that he was not aware of the possible penalties, was not guilty of the criminal offense of which he was pleading guilty, and did not desire to enter a plea of guilty.

{¶ 4}   An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was made knowingly, intelligently, and voluntarily. *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7.   "If a defendant's

guilty plea is not knowing and voluntary, it has been obtained in violation of due process and is void." *State v. Brown*, 2d Dist. Montgomery Nos. 24520 and 24705, 2012-Ohio-199, ¶ 13, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C). *Brown* at ¶ 13.

{¶ 5} Crim.R. 11(C)(2) requires the court to (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses, and to require the State to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 6} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g.*, *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his

plea and the rights he is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 7} Furthermore, when non-constitutional rights are at issue, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id*. at ¶ 15.

{¶ 8} Carter argues that the trial court failed to comply with Crim.R. 11 and failed to ensure that he understood the rights he was waiving. Carter emphasizes that he repeatedly stated at the plea hearing that he was "slow" and he did not believe it was in his best interest to enter the plea. Carter also states that he was not aware of several penalties that would result from his plea and he "felt forced" to accept the plea deal. Carter argues, "It is evident from the trial court record that [he] did not want to change his plea, believed that he was not guilty of the criminal offense, and believed that he was being forced into a plea deal that he did not want."

{¶ 9} During the plea hearing, the prosecutor stated that the parties agreed that Carter would pled guilty to gross sexual imposition and that he would receive an eleven-month sentence; a rape charge would be dismissed. Carter asked the court to explain to him that he would get "time served" and that he would not have to go to the penitentiary, and the court did so. The court then inquired if Carter was making his plea voluntarily, as follows:

THE COURT: Have there been any other promises made to you to get you to plead guilty that I'm not aware of or are those the only two promises that have been made to you?

THE DEFENDANT: Just what [the prosecutor] said and what my attorney said, I just have – I guess I understand. I just wanted to know in simple words because I really don't know that much, I guess. I just want to know how it will work.

I mean, I plead guilty to it and I'm trying to see if I understand it, and I'm getting the felony four and he's dismissed a felony one thing, but then I gotta register for life and then I was promised to leave today, but I got a felony four. But I got – it's called gross sexual something, whatever it is on my record and like he said, you'll be free to leave today, but you gotta register for life now. So is that what that means?

THE COURT: That's what that means.

THE DEFENDANT: Yes, sir.

THE COURT: Has anybody threatened you to get you to plead guilty? Is anybody forcing you to do this or threatening you that if you don't do this, something bad would happen to you or are you doing this because it's what you believe is in your best interests?

THE DEFENDANT: I don't believe it's in my best interest. I just believe that when he told me that you should do it because I don't believe you have no chance, so what am I supposed to do?

THE COURT: Do you want to have a trial in this case? Because you have the right to a trial.

THE DEFENDANT: But I learned it's about my mother and if I can understand what's going on here today instead of traveling back and forth to Tennessee because I feel I'm not guilty of it honestly, but it's not about that. I am just trying to understand what you guys are talking about. I am gonna cut to the chase.

(Counsel consults with defendant.)

THE DEFENDANT: I will plead guilty to what you just explained to me. Does that make any sense? I'm sorry, Mr. Rastatter. I'm a little slow sometimes.

THE COURT: If you are telling me that you don't believe you are guilty of an offense –

THE DEFENDANT: I'm sorry. I didn't mean to – I'm not trying to put no pressure on you or nothing. I just want to get this resolved because of my mother, and I have been right beside her from day one. She's got tubes in her, so she's telling me she just wants me home, and I don't want to put too much pressure on her heart and knowing that I have to go and try to jeopardize my life is going to put a lot of pressure on her. Does that make any sense, Your Honor?

THE COURT: I understand what you are saying, but I also want you to understand that I don't want you to plead guilty to an offense if you're not

guilty of it. If you're telling me you're not guilty, then you have the right to have a trial.

> [DEFENSE COUNSEL]: May I have one moment?

> THE DEFENDANT: I'll plead guilty to that and get it over with.

> [PROSECUTOR]: That's not – There's rules that you have to go by.

> THE DEFENDANT: Oh, I'm sorry.

(Counsel consults with defendant.)

> THE DEFENDANT: Yes. I am guilty of that, Your Honor.

{¶ 10} Following this exchange, the court informed Carter of the offense to which he was pleading guilty (gross sexual imposition), the maximum prison term and fine that he faced (as well as reiterating that the court had agreed to give him eleven months), and that as a result of his plea he would be required to "register in person with the Sheriff in the county in which you reside every ninety days for the rest of your life." Carter indicated that he understood each of these.

{¶ 11} The trial court also informed Carter that he would be placed on post-release control for five years. When the court asked Carter if he knew anything about that, Carter responded that he did not. The court explained that, if Carter pled guilty, the court would sentence him to eleven months in prison, but he would be free to leave that day, that he would have the lifetime sex offender registration requirement every 90 days, "and then you will also be on post-release control, which means a parole officer will supervise you and give you specific rules that you will have to follow and comply with, and that will last for five years." Carter responded:

Excuse me, Your Honor. I am glad you explained this. Can I tell you the truth about something?

THE COURT: Sure.

THE DEFENDANT: I feel I have been forced to take this deal through [defense counsel], and I didn't want to say anything and I didn't know nothing about the probation or none of that. He didn't explain to me the whole thing. He was just trying to get me to take it. I'm not. No, I'm not taking it.

THE COURT: Okay.

THE DEFENDANT: I'm gonna keep my plea of not guilty. I wasn't informed of none of this of what's going on. I don't understand none of this.

THE COURT: Okay. That's your choice and –

THE DEFENDANT: He didn't tell me nothing about probation or none of that. I was not informed of any of this, Your Honor. He was just telling me – I figured it's in his * * * best interest to take it because he feels that he can't do nothing for me, is what he said to me out there. That's his exact words.

THE COURT: All right. We'll take a recess and I'll give you time to talk to your lawyer some more; and if that's your decision for right now, then I respect that.

THE DEFENDANT: Thank you for informing me of my rights. That's very important because I didn't know none of this. I was never even

– he never told me none of this. He said he feels it's in his interest for me to take the deal.

THE COURT: Well, I want you to talk to your lawyer now.

**{¶ 12}** After a six-minutes recess, Carter informed the court that he agreed to the deal. The court again inquired about Carter's understanding of the penalties:

THE COURT: Have you had a chance to talk to your attorney about this?

THE DEFENDANT: Yes, and I understand everything. He explained it to me more, Your Honor.

THE COURT: Are you satisfied with the advice you have been given from your attorney in this case?

THE DEFENDANT: Yes, sir. He's done a great job.

THE COURT: Did he explain to you the post-release control that I was talking to you about?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So you understand that by pleading guilty to this offense, you will be placed on post-release control for five years. Do you understand that?

THE DEFENDANT: Yes, sir. That's after the sentence; is that correct?

THE COURT: Yes. * * *

**{¶ 13}** The court informed Carter of the possible consequences if he violated

post-release control. Carter indicated that he understood. The trial court then explained the constitutional rights that Carter was waiving by entering a plea. Carter stated that he understood his rights and that he was giving up those rights by pleading guilty. The trial court asked Carter how he wanted to plead; Carter responded, "I'd like to plead guilty to that, sir." The court asked, "You're telling the Court at this time that you're guilty of that offense?" Carter replied, "Yes, Your Honor." The court found that Carter had knowingly, voluntarily, and intelligently waived his rights and entered a guilty plea to gross sexual imposition, and it found him guilty. The court immediately sentenced Carter, as agreed.

{¶ 14} Contrary to Carter's assertions, the record reflects that the trial court carefully and patiently reviewed with Carter the consequences of his guilty plea and took pains to ensure that Carter's plea was made knowingly, intelligently, and voluntarily. The court literally complied with Civ.R. 11(C)(2)(c), which concerned Carter's federal constitutional rights. Moreover, the court complied with Crim.R. 11(C)(2)(a) and (b) by inquiring whether Carter's plea was voluntarily entered, whether he had been threatened or any promises had been made to him, and explaining the possible penalties and the effect of his plea. Carter was permitted to (and did) consult with his attorney throughout the plea hearing, and the court made sure that Carter was not entering his plea simply to "get it over with."

{¶ 15} Carter's first assignment of error is overruled.

## II. Ineffective Assistance of Counsel

{¶ 16} Carter's second assignment of error states:

Defendant-appellant was not provided with the effective assistance of trial

counsel as defendant-appellant's trial counsel failed to properly advise defendant-appellant of mandatory post-release control, mandatory sex offender classification, failed to properly investigate the background of the victim's competency, and generally failed to aid in defendant-appellant's defense.

{¶ 17} To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

{¶ 18} Carter claims that his trial counsel acted deficiently by failing to advise him regarding mandatory post-release control and sex offender registration prior to the plea hearing. He also claims that his counsel did not properly investigate the victim's competency and failed to aid in his defense.

{¶ 19} First, Carter asserts that his counsel rendered ineffective assistance by not informing him of mandatory penalties associated with his plea to gross sexual imposition. During the plea hearing, the trial court asked Carter if he understood that, as a result of his plea, he would be placed on post-release control for five years and that he would have to register as a sex offender every ninety days. Carter told the court that defense counsel

"didn't tell me nothing about probation or none of that. I was not informed of any of this, Your Honor." The court ordered a recess to provide Carter an opportunity to discuss the matter with his attorney. After a six-minute recess, Carter stated that he had spoken with his attorney and that he was satisfied with the advice his counsel had given. Carter stated, "I understand everything. He explained it to me more, Your Honor." Carter expressly acknowledged that he understood that he would be placed on post-release control and the consequences he faced if he violated post-release control.

{¶ 20} Even if we were to assume that counsel failed to adequately explain post-release control and the sex offender registration requirements prior to the plea hearing, we have no basis to conclude that Carter was prejudiced by that conduct. The trial court notified Carter of these mandatory sentencing requirements, and the court provided Carter an opportunity to discuss the requirements with his attorney prior to entering his plea. After further discussion with his attorney, Carter indicated that he understood the post-release control and registration requirements and that he wanted to go forward with the plea agreement. Carter's claim of ineffective assistance of counsel based on counsel's alleged failure to advise him of the mandatory post-release control and sex offender registration requirements prior to the plea hearing is without merit.

{¶ 21} Next, Carter claims that his defense counsel did not properly investigate the victim's competence and failed to aid in his defense. "A plea of guilty waives any claim that the accused was prejudiced by ineffective assistance of trial counsel, except to the extent that the ineffectiveness alleged may have caused the guilty plea to be less than knowing, intelligent, and voluntary." *State v. Stivender*, 2d Dist. Montgomery No. 23973,

2011-Ohio-247, ¶ 15. Carter's arguments regarding his counsel's alleged failures to investigate the victim's competence and to aid in his defense are based on statements made at a January 25, 2013 status hearing, approximately ten months before the plea hearing. Carter has not argued, much less demonstrated, that counsel's conduct at or prior to January 25, 2013 affected his decision to enter a plea.

{¶ 22} Even if we were to consider the issues, we would conclude that the record does not support Carter's claim that his counsel rendered ineffective assistance in this regard. At a status hearing on January 25, 2013, Carter complained to the court that he had had no contact with his defense counsel in four months and that he had not received any discovery regarding his case. Carter expressed his belief that defense counsel was not acting in his (Carter's) best interest, because counsel had proposed that Carter plead to the rape charge without providing Carter the discovery packet. Carter also questioned how the victim could be found to be incompetent for purposes of his case when, according to Carter, the victim was placed on probation by the juvenile court and "the juvenile judge across the street said that person is competent."

{¶ 23} Defense counsel indicated to the court that he believed he had provided a discovery packet to Carter, but counsel offered to supply it again. The prosecutor stated that he and defense counsel had talked about the question of the victim's competence, and he indicated that the purpose of one of the continuances in the case was to obtain a competency evaluation of the victim. An expert evaluated the victim and concluded that the victim was not competent. The prosecutor further stated that he did not believe a competency hearing had been ordered by the juvenile court and, regardless, "those two types of competencies are

different than what we're talking about." The prosecutor explained that the expert in Carter's case "did a specific exam to request about the elements of the crime that Mr. Carter is charged with here * * *, but it would have been a different exam" in juvenile court. The prosecutor reiterated that "no exam was ever done over in juvenile court."

{¶ 24} The trial court ordered defense counsel to provide Carter a copy of the discovery packet that day and to personally consult with Carter during the week of February 4, 2013, after counsel returned from vacation. We have no reason to believe that counsel failed to comply with the court's order. In addition, in February 2013, defense counsel obtained an order for the victim's juvenile court records. Defense counsel ultimately negotiated a plea to gross sexual imposition, which included the dismissal of the rape charge and an agreed sentence that was satisfied by the time Carter had served in jail.

{¶ 25} The record, including the transcript of the January 25, 2013 status hearing, reflects that defense counsel was aware of the issue surrounding the victim's competency and investigated that issue. We find nothing in the record to support Carter's claims that counsel failed to aid Carter in his defense and did not act in Carter's best interest.

{¶ 26} Carter's second assignment of error is overruled.

### III. Conclusion

{¶ 27} The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Ryan A. Saunders
Daniel A. Perry

Hon. Douglas M. Rastatter