[Cite as *State v. Stapleton*, 2017-Ohio-1309.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2016-CA-9 |
| | : | |
| v. | : | T.C. NO. 15-CR-277 |
| | : | |
| MICHAEL C.R. STAPLETON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___7th___ day of _____April_____, 2017.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, 200 N. Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

JENNIFER D. BRUMBY, Atty. Reg. No. 0076440, 4244 Indian Ripple Rd., Suite 150, Dayton, Ohio 45440
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Michael Stapleton pled guilty in the Champaign County Court of Common Pleas to murder, an unclassified felony, and burglary, a felony of the third degree. The trial court sentenced him to consecutive sentences totaling 18 years to life in prison and ordered him to pay restitution, court-appointed counsel fees, and court costs.

{¶ 2} Stapleton appeals from his conviction, claiming that the trial court failed to comply with Crim.R. 11 at his plea hearing and erred in imposing maximum consecutive sentences. For the following reasons, the trial court's judgment will be affirmed.

## I. Background and Procedural History

{¶ 3} In November 2015, Stapleton resided with his wife, his mother-in-law, and his mother-in-law's husband. Six children also resided in the household; Stapleton's in-laws had a combined three children from prior relationships, Stapleton had two children with his wife, and his wife had an additional child from another relationship. One child was a teenager; the others were seven years old or younger.

{¶ 4} During the morning and afternoon hours of November 29, 2015, Stapleton was the primary caregiver for the six children while the other adults were at work. During that time, Stapleton physically abused B.J., the four-year-old son of his mother-in-law's husband. B.J. suffered severe blunt force trauma to his head and abdomen. When B.J. did not awaken from a nap that afternoon, Stapleton called family members and 911. B.J. was transported to the hospital. He died from the abuse.

{¶ 5} On December 10, 2015, Stapleton was indicted on three counts of murder, one count of felonious assault, three counts of endangering children, one count of involuntary manslaughter, and one count of possession of criminal tools. All of the charges stemmed from the events of November 29. Stapleton initially pled not guilty to the charges. He remained in jail while the charges were pending.

{¶ 6} While monitoring Stapleton's telephone conversations at the jail, the Champaign County Sheriff's Office became aware that Stapleton was concerned that law enforcement would learn about an unrelated offense. Through additional investigation,

the sheriff's office learned that, sometime between November 1 and 4, 2015, Stapleton had broken into a family member's residence in Champaign County and had stolen money, a Hi-Point handgun, and ammunition. Stapleton had filed off the serial number on the gun and attempted to sell it. While in jail, Stapleton wrote to his father, asking for help in retrieving and disposing of the weapon.

{¶ 7} On March 25, 2016, Stapleton entered into a plea agreement with the State, pursuant to which he pled guilty to one count of murder (Count Four: proximate result of endangering children) and to burglary (Count Ten), which was added at the plea hearing by a bill of information. In exchange for the plea, the State agreed to dismiss the remaining eight charges and to recommend a presentence investigation. A presentence investigation was conducted, and the parties filed detailed sentencing memoranda. On April 20, 2016, the trial court sentenced Stapleton to consecutive sentences of 15 years to life for the murder and 36 months for the burglary. He was also ordered to pay $350 in restitution to the victims of the burglary, court-appointed counsel fees, and court costs.

{¶ 8} Stapleton appeals from his conviction, raising two assignments of error.

## II. Compliance with Crim.R. 11

{¶ 9} In his first assignment of error, Stapleton asserts that the trial court failed to comply with Crim.R. 11 in accepting his guilty pleas. Specifically, he argues that "he was not properly advised that if he went to trial, he would be entitled to a presumption of innocence" and "would not have to prove or disprove any facts in the case, or call any witnesses." Stapleton asserts that, had he been advised of the presumption of innocence, he would not have entered his guilty pleas.

{¶ 10} Crim.R. 11(C)(2) requires the court to address the defendant personally and

(a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 11} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g., State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 12} Crim.R.11(C)(2)(c) does not require the trial court to inform a defendant that he or she enjoys a presumption of innocence. *State v. McDonald*, 8th Dist. Cuyahoga No. 95651, 2011-Ohio-1964, ¶ 7; *State v. Kordelewski*, 2d Dist. Montgomery No. 15425,

1996 WL 98945 (Mar. 8, 1996). Nor does that Rule require the trial court to inform the defendant that, at trial, he would have no obligation to call any witnesses or to prove/disprove any facts. Rather, Crim.R. 11(C)(2)(c) requires, in relevant part, that the trial court inform the defendant that, by entering a plea, the defendant is waiving the right "to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

{¶ 13} As part of the court's colloquy during the plea hearing, the trial court asked Stapleton if he understood that, if the court accepted his guilty pleas, he would be giving up certain constitutional rights. The following exchange occurred:

THE COURT: Do you understand that if the Court accepts your plea of guilty, you give up certain Constitutional rights, and those include, and this is now on both charges, the right to a jury trial?

[STAPLETON]: Yes, sir.

THE COURT: Do you understand that you give up the right to confront witnesses against you, which is also known as the right to face those who accuse you and cross-examine them?

[STAPLETON]: Yes, sir.

THE COURT: Do you understand that you give up the right to have compulsory process for obtaining witnesses in your favor, which is also known as the right to make witnesses attend and testify in your favor pursuant to subpoena?

[STAPLETON]: Yes, sir.

THE COURT: Do you understand that you give up the right to make the

State prove your guilt beyond a reasonable doubt before you are found guilty?

[STAPLETON]: Yes, sir.

THE COURT: Do you understand that you give up the right that if you went to trial, you cannot be compelled to testify against yourself, which is also known as the right to remain silent?

[STAPLETON]: Yes, sir.

{¶ 14} The trial court's colloquy reflects that the trial court strictly complied with Crim.R. 11(C)(2)(c) by informing Stapleton of the listed constitutional rights and determining that Stapleton understood that, by his plea, he was waiving those rights. Stapleton's first assignment of error is overruled.

### III. Maximum Sentence

{¶ 15} In his second assignment of error, Stapleton asserts that the trial court erred in imposing maximum consecutive sentences. He asserts that the trial court did not consider the sentencing factors indicating that his conduct was less serious or the circumstances surrounding his conduct. He states: "Mr. Stapleton shows great remorse for his actions, has accepted responsibility for his conduct, has an extremely insignificant adult criminal recorded [sic] limited to misdemeanor offenses, etc. Accordingly, these less serious factors should have been weighed when determining whether to impose a concurrent or consecutive sentences for the charges of burglary and murder." Stapleton contends that the record does not support consecutive sentences.

{¶ 16} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See*

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 17} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 18} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the

offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 19} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record.

{¶ 20} After determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it determines that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the

multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 21} In imposing consecutive sentences, the trial court must make the statutory findings and incorporate them into its sentencing entry, but the trial court is not required to state reasons to support its findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

{¶ 22} At the sentencing hearing, the trial court heard from the prosecutor, Stapleton's counsel, B.J.'s parents, and Stapleton. The court discussed with Stapleton the offenses and Stapleton's drug use. Before imposing its sentence, the court stated that it did not believe Stapleton's description of how the injuries to B.J. occurred; the court stated that Stapleton's explanation "is not consistent with the severity of the injuries that were inflicted upon the child" and that, in pronouncing sentence, it would take into account its belief that Stapleton was not credible regarding the source and causation of B.J.'s injuries.

{¶ 23} The trial court indicated at the sentencing hearing that it had reviewed the presentence investigation report, the parties' sentencing memoranda, the oral statements of counsel, Stapleton, and the victim representatives (B.J.'s parents), and the letters sent to the court on behalf of the victim (Exhibits 1 through 22). The court told the parties that it had considered the purposes and principles of sentencing as set forth in R.C. 2929.11,

as well as the factors set forth in R.C. 2929.12. For each offense, the trial court detailed the factors that made the offense more serious and less serious, and it set forth facts relating to the likelihood of recidivism.

{¶ 24} After considering "all sentencing factors," the court imposed an indefinite sentence of 15 years to life for murder, as required by R.C. 2929.02(B)(1), and a maximum term of 36 months in prison for burglary. The trial court's individual sentences were not contrary to law, and in determining the individual sentences for the two offenses, the court complied with its obligation to consider the statutory criteria that apply to every felony offense.

{¶ 25} In imposing consecutive sentences, the trial court made the required statutory findings, using the language of R.C. 2929.14(C)(4). The court found that "consecutive sentencing is necessary to protect the public from crime or to punish the Defendant. And consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and the danger that the Defendant poses to the public." The court further found that "at least two of the multiple offenses were committed as part of one or more courses of conduct. And the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the Defendant's conduct."

{¶ 26} Although not required, the trial court provided "some additional rationale" regarding its imposition of consecutive sentences. The court stated:

The Court finds that regarding Count Ten, that the type of property stolen,
that is a firearm, the dangerousness of the property stolen, the filing of the

serial numbers, which was designed to evade detection as a stolen weapon, and the Defendant's solicitation of an otherwise innocent third party to retrieve and dispose of the property, coupled with the occurrence of less than one month later of the Defendant's explosion in Count Four of anger and deadly violence toward a 4-year-old child for whom he was charged with caring, protecting, and supporting, supports a finding that the harm caused by the Defendant's commission of the offenses so committed was so great or unusual that no single prison term adequately reflects the seriousness of the Defendant's conduct.

**{¶ 27}** Upon review of the record, in imposing consecutive sentences, the trial court made the requisite findings under R.C. 2929.14(C)(4), both at the sentencing hearing and in its judgment entry. And considering the facts underlying both offenses, we cannot find that the trial court's findings are clearly and convincingly unsupported by the record. Contrary to Stapleton's assertion, the trial court was not required to consider the factors set forth in R.C. 2929.12 in determining whether Stapleton's sentences should run concurrently or consecutively.

**{¶ 28}** Stapleton's second assignment of error is overruled.

### IV. Conclusion

**{¶ 29}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Jane A. Napier
Jennifer D. Brumby

Hon. Nick A. Selvaggio