**[Cite as *State v. Holsinger*, 2020-Ohio-5353.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
|  | : | Appellate Case No. 2019-CA-25 |
| Plaintiff-Appellee | : | |
|  | : | Trial Court Case No. 2019-CR-114 |
| v. | : | |
|  | : | (Criminal Appeal from |
| NATHAN ALLEN HOLSINGER | : | Common Pleas Court) |
|  | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of November, 2020.

. . . . . . . . . .

KEVIN TALEBI, Atty. Reg. No. 0069198, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

K. GEORGE KORDALIS, Atty. Reg. No. 0089697, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Nathan Allen Holsinger pled guilty in the Champaign County Court of Common Pleas to having weapons while under disability, a third-degree felony, and domestic violence, a first-degree misdemeanor. In exchange for the plea, the State agreed to dismiss four additional charges and to recommend a presentence investigation (PSI). Holsinger agreed to pay any court costs and court-appointed legal fees that the court imposed. The trial court sentenced Holsinger to 36 months in prison for having a weapon while under disability and six months in jail for domestic violence, to be served concurrently, fines totaling $250, and court costs.

**{¶ 2}** For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

**{¶ 3}** According to the complaint filed in the municipal court, at approximately 5:30 p.m. on May 4, 2019, the victim, "Nichole," called 911 and reported that her boyfriend, Holsinger, chased her through their home with a loaded firearm. Nichole told the dispatcher that she had locked herself in the bathroom and did not know Holsinger's location.

**{¶ 4}** Two deputies responded to the call. Deputy Dixon, who arrived first, located Holsinger on the front porch of the home and detained him. Deputy Kriesel arrived soon thereafter, placed Holsinger in handcuffs, and frisked him for weapons. No weapons were found on Holsinger's person. Deputy Dixon told Nichole that it was safe to leave the bathroom.

**{¶ 5}** Nichole informed the deputies that, during the prior 48 hours, Holsinger had been acting paranoid and believed that his brother was sneaking into the home.

Holsinger then began walking around outside with a rifle. Nichole stated that the situation began to escalate, and Holsinger took a revolver from a lock box in a closet and pointed it at her head. Nichole grabbed her phone and ran to the bathroom. Holsinger grabbed Nichole's hair and shirt, causing her shirt to tear. Deputy Kriesel observed a tear on the back of Nichole's shirt, bruises around both of her wrists, and small cuts to her hands and fingers. Officers located both firearms inside the home.

{¶ 6} Holsinger initially was charged by complaint in the Champaign County Municipal Court with having weapons while under disability and aggravated menacing. After a preliminary hearing, the municipal court found probable cause to believe that Holsinger committed those offenses. On May 6, Deputy Kriesel filed additional complaints for misdemeanor assault and domestic violence; the municipal court sent those charges to the grand jury.

{¶ 7} On June 3, the grand jury indicted Holsinger on four counts of having weapons while under disability and two counts of misdemeanor domestic violence. Two of the weapons counts addressed the rifle (Counts 2 and 4), and two addressed the revolver (Counts 1 and 3); Counts 1 and 2 cited a prior burglary conviction in Franklin County, and Counts 3 and 4 cited a prior conviction for aggravated trafficking in drugs in Madison County.

{¶ 8} The magistrate set a $7,000 bond, with conditions. At his arraignment with counsel, Holsinger pled not guilty. On June 13, the court modified Holsinger's bond to a personal recognizance bond with house arrest and electronic monitoring. The house arrest included exceptions for traveling directly to and from the courthouse or Holsinger's attorney's office. At Holsinger's request, the trial court later modified his bond so that he

could reside with his mother and step-father; the court denied Holsinger's request to be able to work outside around their residence.

{¶ 9} On July 15, 2019, the date of the scheduled final pretrial conference, the trial court held a hearing on allegations that Holsinger had violated his bond on July 11 and July 14 by traveling to places not authorized under his bond conditions. Holsinger admitted to the conduct, but offered explanations for why he violated his bond. The court found Holsinger guilty of the bond violations and told him that the bond violations would be used as a sentencing factor in the event he were convicted of an offense in the case.

{¶ 10} Following the bond violation hearing, the State informed the court that the parties had reached a plea agreement. The trial court then conducted a plea hearing, pursuant to Crim.R. 11, during which Holsinger pled guilty to one count of having weapons while under disability (Count 1) and one count of domestic violence (Count Five). The court ordered a PSI and gave Holsinger instructions about completing the PSI questionnaire. The court revoked Holsinger's bond and scheduled sentencing for August 16, 2019.

{¶ 11} At sentencing, the trial court heard from the prosecutor, Nichole, defense counsel, and Holsinger. The prosecutor recommended a prison sentence of 30 months in prison and indicated that it would favorably consider judicial release to West Central after Holsinger served one year in prison. The prosecutor stated that the State did not think Holsinger presently was amenable to community control, noting Holsinger's criminal history. It also had "some very serious concerns" about Holsinger's actions, including that he reportedly was on heroin and methamphetamine at the time of the offenses. The prosecutor noted that Holsinger claimed not to remember what he did, and the State was

concerned about his lack of memory and whether that was genuine.

{¶ 12} Nichole wrote a letter to the court and she told the court at sentencing that she bore "some responsibility for this situation." She indicated that she knew Holsinger's history, yet failed to remove the weapons from the house before he moved in.

{¶ 13} Defense counsel asked the court to consider community control sanctions with a stipulation that Holsinger complete a program at West Central. Defense counsel acknowledged that the facts of the case were "severe" and that Holsinger was high on heroin and methamphetamine when the incident occurred. Counsel emphasized Holsinger's "difficult upbringing" and his need for treatment after this relapse.

{¶ 14} Holsinger apologized to the court and Nichole. He stated that he "might need maybe a prison sentence. But two and a half years I really don't agree with." Holsinger said that community control would probably help him, but he was ready to accept whatever punishment the court imposed.

{¶ 15} Prior to imposing sentence, the court asked Holsinger about his PSI questionnaire, which was not completed before the PSI interview. Holsinger reportedly had told the PSI interviewer that he had not received it. Holsinger told the trial court that he left the courthouse after his plea without the PSI questionnaire. The court indicated that it found the assertion that he never received one to be not credible. The court noted that Holsinger could not get community control without a PSI. The court further noted that Holsinger had violated the terms of his bond while this case was pending. The court also addressed Nichole's assertion that she was responsible for Holsinger's predicament. The court stated that Holsinger's acts of pointing a revolver at her head and of grabbing her hair and shirt were not due to the presence of guns in the house.

{¶ 16} After discussing the seriousness and recidivism factors, the trial court imposed concurrent, maximum 36-month and six-month sentences for having weapons under disability and domestic violence, respectively. The trial court told Holsinger that, upon his release from prison, he was subject to post-release control for a discretionary period up to three years; the court informed Holsinger of the consequences if he violated post-release control. Upon considering the seriousness and recidivism factors, the court did not recommend intensive program prison or a risk reduction sentence. The court found that Holsinger was employable and in good health for purposes of his present and future ability to pay financial sanctions. It imposed concurrent $250 fines for both offenses and ordered Holsinger to pay court costs. The court determined that Holsinger was entitled to 74 days of jail time credit, plus additional credit pending transport to prison.

{¶ 17} Holsinger appeals from his convictions.

### I. *Anders* Appeal Standard

{¶ 18} Holsinger's appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We informed Holsinger that his attorney had filed an *Anders* brief on his behalf and granted him 60 days from that date to file a pro se brief. To date, no pro se brief has been filed.

{¶ 19} Pursuant to *Anders,* we must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Id.* at 744; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that,

"on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue — whether presented by appellate counsel, presented by the appellant, or found through an independent analysis — is not wholly frivolous, we must appoint different appellate counsel to represent the appellant. *Id.* at ¶ 7.

### III. *Anders* Review

#### A. Holsinger's Guilty Plea

{¶ 20} "An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If a defendant's plea is not knowing, intelligent, and voluntary, it "has been obtained in violation of due process and is void." *Id.*

{¶ 21} "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. The Supreme Court of Ohio has urged trial courts to comply literally with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, in reviewing the plea colloquy, the focus should be on whether "the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *State v. Dangler*, Ohio Slip Opinion No. 2020-Ohio-2765, __ N.E.3d __, ¶ 12.

{¶ 22} Crim.R. 11(C)(2) requires a trial court to address the defendant personally

and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 23} In general, a defendant is not entitled to have his or her plea vacated unless the defendant demonstrates he or she was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C). *Dangler* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The test for prejudice is "whether the plea would have otherwise been made." *Id.*

{¶ 24} This general rule is subject to two exceptions. *Id.* at ¶ 16. First, the trial court must comply strictly with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Id* at ¶ 14; *Clark* at ¶ 31. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Dangler* at ¶ 14.

{¶ 25} Second, "a trial court's complete failure to comply with a portion of Crim.R.

11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. *See also State v. Bishop,* 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11 (a defendant must show prejudice if the trial court partially complied with Crim.R. 11(C) in regard to a nonconstitutional right, but no showing of prejudice is required if the trial court completely failed to comply).

{¶ 26} We have reviewed the transcript of the plea hearing and find that the trial court fully complied with the requirements of Crim.R. 11. The trial court initially questioned Holsinger about whether he was under the influence of alcohol or illegal drugs and about the medications he was taking. The court inquired about whether he had discussed the case with his attorney, whether he received enough information to make a decision on whether to enter a plea, and whether he had confidence in his attorney.

{¶ 27} The court reviewed the two offenses to which Holsinger was entering a plea and the maximum sentences for those offenses. The court told Holsinger that the felony and misdemeanor sentences would run concurrently. The court informed Holsinger that he could be required to pay court costs and attorney fees. The court reviewed what community control entails and the potential consequences for violating community control. The trial court discussed judicial release and post-release control. The court told Holsinger that it was not involved in the plea negotiations and that it would determine Holsinger's sentence. Holsinger expressed that he understood what the court had told him.

{¶ 28} The trial court told Holsinger that a guilty plea was a complete admission of guilt, and it reviewed the constitutional rights that Holsinger was waiving by entering a

plea. Holsinger denied that his plea was the result of promises (other than the plea agreement) or threats. Holsinger stated that he did not have any defense to the charges, and he admitted to committing Counts One and Five of the indictment. Holsinger told the court that he was entering his plea voluntarily and "of [his] own free choice," and he signed the plea forms.

{¶ 29} Upon review of the plea hearing transcript, we find no non-frivolous issues relating to Holsinger's plea.

{¶ 30} In addition, we find nothing in the record to suggest that anything that occurred prior to the plea hearing precluded Holsinger from entering a knowing, intelligent, and voluntary plea. A plea of guilty is a complete admission of guilt. *E.g., State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9; *State v. Wheeler*, 2d Dist. Montgomery No. 24112, 2011-Ohio-3423, ¶ 3; Crim.R. 11(B)(1). Consequently, a guilty plea generally waives all appealable errors that may have occurred in the trial court, unless such errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus; *Wheeler* at ¶ 3. We find no non-frivolous issues related to the events prior to Holsinger's guilty plea.

*B. Holsinger's Sentence*

{¶ 31} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly"

finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

**{¶ 32}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 33}** In imposing sentence, the trial court made the following findings:

Regarding pre-sentence findings, the Court finds that Defendant violated bond and had previously served prison terms. The Defendant's Ohio Risk Assessment Score is 20, which is considered moderate. Court finds that Counts One and Five are not allied offenses of similar import and do not merge. In imposing sentence, the Court considered and applied the purposes and principles of sentencing as set forth in 2929.11 Divisions A, B, and C. The Court also considered the seriousness of the conduct, likelihood of recidivism, and lack of service in the Armed Forces.

Because the victim is here, and because the victim has given the Court insight into her thoughts, the Court is going to read the seriousness and recidivism factors on the record now so that the victim understands the

basis for the Court's decision.

\* \* \*

With regard to more serious factors, the Court finds the Defendant used the firearm to facilitate domestic violence. The Defendant used the firearm by possessing it and pointing it at the victim's head in a threatening manner. The Defendant used more than one firearm during the weapons under disability offense. The Defendant's relationship with the victim facilitated the offense. The victim suffered physical injuries as a result of the domestic violence. And the Defendant committed the offenses within a little over four months after his release from his last term of imprisonment.

With regard to less serious factors, the Court acknowledges that the victim facilitated the offense because the firearms in the residence, shared with the victim and Defendant, were owned by the victim. Court concludes that factors establishing Defendant's conduct is more serious outweigh factors establishing conduct is less serious.

With regard to likely to commit future crimes and recidivism, the Court finds that the Defendant has a history of criminal convictions. And he's not responded favorably to sanctions previously imposed for criminal convictions. Court finds that the victim and the Defendant desire to continue their relationship. Making the domestic violence offense committed under circumstances likely to reoccur. The Court finds that Defendant has four prior community control violation revocations of sentence. And the Court finds that the Defendant committed multiple bond

violations within two weeks of being placed on personal recognizance bond in the case at bar.

With regard to less likely to commit future crimes, the Court finds that prior to committing the offense the Defendant had not been adjudicated a delinquent child. The Court finds Defendant has remorse. The Court questions whether the remorse is genuine. Court concludes that factors establishing recidivism is more likely outweigh factors establishing recidivism is less likely. Court considered military service record and finds he has no military service record.

{¶ 34} The PSI reflects that Holsinger was 40 years when the offenses occurred and at sentencing. He had no juvenile record. His first adult offense, misdemeanor assault, occurred when he was 21 years old. In 2010, Holsinger was convicted of burglary, a second-degree felony, for which he received community control. In 2011, his community control was revoked, and Holsinger served four years in prison. Holsinger committed several misdemeanor theft offenses in 2013 and 2014. In 2018, he was convicted of misdemeanor drug possession. In two of those cases, Holsinger's community control was revoked and the municipal court imposed jail terms. In June 2018, Holsinger was sentenced to seven months in prison for breaking and entering.

{¶ 35} Holsinger reported that he was using methamphetamine and heroin at the time of the offense. He told the PSI investigator that he had overdosed 15 to 20 times and was transported to the hospital most of those times.

{¶ 36} Holsinger obtained a GED and was not in special education classes while in school. Holsinger described his health as good and denied having any health

concerns during the PSI interview. Holsinger previously held employment. From December 2017 to February 2018, he worked at Subway; and from March 2019 to May 2019, he worked as a laborer. In the months immediately prior to the instant offenses, Holsinger worked 40 hours per week, making approximately $2,000 per month. He reported monthly expenses totaling $1,580.

{¶ 37} Upon review of the record, including the PSI, we find no arguably meritorious claim that the trial court's sentence was clearly and convincingly unsupported by the record. Holsinger's prison term for having weapons while under disability and his jail term for domestic violence were within the statutory ranges. Holsinger's criminal history and the conduct underlying the offenses supported the trial court's imposition of maximum sentences. The court reasonably concluded that Holsinger had the ability to pay a $250 fine and that amount was not contrary to law. The trial court supported its decisions to disapprove Holsinger's participation in intensive program prison and a risk reduction sentence.

{¶ 38} The trial court determined that Holsinger was entitled to 74 days of jail time credit. In its judgment entry, the trial court indicated that this calculation represented 41 days from May 4, 2019 (date of arrest) to June 13, 2019 (date of personal recognizance bond), and 33 days from July 15, 2019 (date of plea hearing) to August 16, 2019 (date of sentencing). The court indicated that Holsinger would receive additional credit while awaiting transport to prison. The record supports this calculation of jail time credit.

{¶ 39} We have examined the entire record and conducted our independent review in accordance with *Penson*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300. We conclude that no non-frivolous issues exist for appeal in this case.

## IV. Conclusion

**{¶ 40}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Kevin Talebi
K. George Kordalis
Nathan Allen Holsinger
Hon. Nick A. Selvaggio